IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CINDA LEE LOVATO and MARK        §
MARTINEZ,                        §
                                 §
        Plaintiffs,              §
                                 §
v.                               §        2:20-CV-70-BR
                                 §
AMY HITCHCOCK et al.,            §
                                 §
        Defendants.              §

**ORDER DENYING DEFENDANTS HITCHCOCK, VANOVER, RICE, HOWARD, AND SHOOK'S MOTION TO DISMISS, GRANTING DEFENDANTS THOMAS AND DAWSON'S MOTION TO DISMISS, AND GRANTING IN PART AND DENYING IN PART DEFENDANT POTTER COUNTY'S MOTION TO DISMISS**

Before the Court is Defendants Amy Hitchcock ("Hitchcock"), Tanner Vanover ("Vanover"), Jared Rice ("Rice"), Brett Howard ("Howard"), and Sara Shook's ("Shook") Motion to Dismiss (ECF 8), Defendants Brian Thomas ("Thomas") and Lisa Dawson's ("Dawson") Motion to Dismiss (ECF 7), and Defendant Potter County's Motion to Dismiss (ECF 6). Plaintiffs Cinda Lovato and Mark Martinez filed a consolidated response. (ECF 22). Defendants filed a consolidated reply.[1] (ECF 25).

---

[1] Individual defendants may raise the defense of qualified immunity in a motion to dismiss. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 n.30 (1982) (qualified immunity applies to state officials sued for constitutional violations under section 1983); *see Blakely v. Andrade*, 360 F. Supp. 3d 453, 477–78 (N.D. Tex. 2019) (court considered qualified immunity at motion to dismiss stage where initial motion raised defense, plaintiff filed amended complaint addressing defense, and subsequent motion aimed at amended complaint reasserted defense); *Brown v. City of Houston*, 297 F. Supp. 3d 748, 772 (S.D. Tex. 2017) (qualified immunity defense may be raised in a motion to dismiss). Here, Thomas, Dawson, Hitchcock, Vanover, Rice, Howard, and Shook (collectively "individual Defendants") did not raise the defense in their motions to dismiss, but subsequently raised it in their answer filed September 18, 2020. (ECF 29). Because the individual Defendants did not raise, argue, or brief qualified immunity in their motions to dismiss, the Court does not address qualified immunity in its analysis. Further, based not only on the fact that the individual Defendants did not raise qualified immunity in their motions to dismiss, but also on the September 18, 2020 Notice of Assertion of Qualified Immunity, it appears the individual Defendants do not dispute Plaintiffs' Original Complaint (the "Complaint") (ECF 1) states facts which, if true, could possibly overcome the defense of qualified immunity, such that discovery related to qualified immunity may proceed. (*See* ECF 30) (requesting Court issue order limiting discovery to facts necessary to resolve qualified immunity issues); *see Zapata*

## I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[2]

Plaintiffs individually, and Cinda Lovato on behalf of all wrongful death beneficiaries and the estate of Daniel Martinez ("Martinez"), bring this lawsuit against Defendants asserting claims arising from Martinez's suicide while he was a pretrial detainee at the Potter County Jail.[3] (*See* ECF 1 at 4–5).

Martinez suffered from depression, a mental condition that substantially limited his brain function. (*Id*. at 5). After arriving at the jail as a pretrial detainee, Martinez made it clear to multiple jail employees that he was at risk of suicide. (*Id*.). Shook, a mental health officer at the jail, and Howard, an officer at the jail, conducted a suicide risk assessment on Martinez, during which Martinez cried. (*Id*.). Martinez told Shook and Howard that he "regularly feels like hurting himself," "thinks of killing himself all the time," and was having suicidal thoughts. (*Id*.). Martinez asked Shook and Howard for "mental health treatment" "so he [would] not feel this way anymore." (*Id*.). Shook and Howard asked Martinez if he had a plan to commit suicide, to which Martinez replied "it's not hard to think of a way that [I] would do it." (*Id*.). Shook and Howard refused Martinez's request for mental health treatment and placed Martinez in a solitary-confinement cell with multiple tie-off points and a partition enclosing the toilet area to which a ligature could be secured. (*Id*. at 5–6). The cell had a solid metal door and a small window, which required an officer to stop outside and peer through the window to observe Martinez. (*Id*. at 6). All Defendants knew the cell's configuration made it difficult for an officer to observe a detainee inside the cell. (*Id*.).

---

*v. Melson*, 750 F.3d 481, 484–85 (5th Cir. 2014) (before even limited discovery on the issue of qualified immunity may proceed, the court must first find the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity).

[2] The Court takes its factual account from the Complaint. (ECF 1).

[3] Plaintiffs are decedent Martinez's parents.

Shook and Howard took no other suicide precautions, such as confiscating Martinez's bedding or uniform or starting a suicide watch. (*Id*. at 6–7). Shook and Howard knew that inmates are at higher risk of suicide when they are housed by themselves, away from any other people who can either call for help or stop a suicide in progress. (*Id*. at 6). After placing Martinez in a solitary-confinement cell with his uniform and blanket, Howard told Shook that he believed Martinez "needed assistance." (*Id*. at 7). However, Shook and Howard did not attempt to get Martinez medical or psychiatric attention. (*Id*.). Plaintiffs allege Shook and Howard did not inform Rice, Hitchcock, or Vanover, the officers responsible for supervising Martinez's cell block, that Martinez was a suicide risk and required additional constant monitoring. (*Id*. at 8). In the alternative, Plaintiffs allege Shook and Howard informed Rice, Hitchcock, and Vanover that Martinez was a suicide risk and requested mental health treatment, but Rice, Hitchcock, and Vanover did nothing, and Hitchcock and Vanover failed to observe Martinez's cell at intervals frequent enough to guard against suicide, as they knew Martinez required. (*Id*. at 8, 13).

Rice failed to continuously observe Martinez's cell by video surveillance as the officer in the control room, partially due to inadequate training and staffing. (*Id*. at 8). All Defendants knew inadequate training and staffing were recurring problems. (*Id*.). In the alternative, Plaintiffs allege Rice watched Martinez prepare to commit suicide and did nothing. (*Id*. at 9). The surveillance video Rice was supposed to be watching, or in the alternative, was actually watching, shows Martinez prepare a ligature, repeatedly test that the slip-knot would tighten, and take the noose on and off his neck multiple times before finally securing it to the toilet-area partition and lowering himself to the floor, all over a period of 30 minutes. (*Id*.). As he took steps to end his life, Martinez repeatedly looked up at the camera and stood next to the small window while wearing the ligature around his neck, but nobody observed him during that time. (*Id*.). Had anyone looked at the video

3

and personally observed Martinez during that time, they would have seen the suicide in progress. (*Id*.). Hitchcock discovered Martinez hanging in his cell as she was performing a routine patrol of the cell block. (*Id*.).

Plaintiffs allege Shook, Howard, Rice, Hitchcock, and Vanover received inadequate training in suicide prevention. (*Id*. at 10). These allegations are discussed in more detail below. In the alternative, Plaintiffs allege Shook, Howard, Rice, Hitchcock, and Vanover received training, but ignored it and displayed deliberate indifference to Martinez's disability and medical needs. (*Id*.). Plaintiffs further allege that Thomas, the Sheriff, and Dawson, the Potter County Jail Administrator, failed to supervise Shook, Howard, Rice, Hitchcock, and Vanover, and knew that officers under their supervision regularly placed detainees at risk of suicide in dangerous cells, failed to start suicide watches, failed to request mental health treatment, and used video surveillance to observe inmates in solitary confinement cells instead of in-person observation. (*Id*. at 4, 10).

Plaintiffs allege the following prior suicides occurred at Potter County Jail:

1. 1993—Louis Passenau died of suicide by hanging. He used his bed sheet as a ligature.;

2. 1997—Timothy Harris died of suicide by hanging in his cell.;

3. 1998—Randy Bailey died of suicide by hanging in his cell.;

4. 2001—Raymond Bingle died of suicide by hanging in a single-person cell. He used his bed sheet as a ligature.; and

5. 2008—Marcos Portillo died of suicide by hanging in a single-person cell. He used his bed sheet as a ligature.

(*Id*. at 11–12). Dawson knew of each of these suicides. (*Id*. at 12). Thomas knew of "many" of the suicides. (*Id*.). Plaintiffs allege when Martinez entered the jail, the jail was overcrowded and understaffed, and Thomas and Dawson later discussed overcrowding with local news media and

reporters. (*Id*. at 4). Dawson told the media overcrowding "is spreading [the jail's] resources thin across the board [including] medical expenses." (*Id*.). Thomas also knew the jail had too many prisoners for the available space. (*Id*.). Neither Thomas nor Dawson hired additional staff. (*Id*.).

Plaintiffs bring the following claims in the Complaint: (1) Fourteenth Amendment claims under 42 U.S.C. § 1983 against the individual Defendants in their individual capacities; and (2) Fourteenth Amendment claims under 42 U.S.C. § 1983 and claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") against Potter County. The three motions to dismiss seek dismissal of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

Rule 12(b)(6) provides that a defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Ruiz v. Brennan*, 851 F.3d 464 n.5 (5th Cir. 2017) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 555–56, "Factual allegations must be enough to raise a right to relief above the speculative level . . ."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2)'s pleading standard does not require detailed factual allegations, but it demands more than labels and conclusions. *See Iqbal*, 556 U.S. at 678. A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

### III.   ANALYSIS

#### A. Plaintiffs' Fourteenth Amendment Claims Under Section 1983 Against the Individual Defendants

Plaintiffs bring claims against the individual Defendants asserting Martinez received inadequate medical care and was subjected to conditions that constituted punishment in violation of Martinez's Fourteenth Amendment rights. (ECF 1 at 12–14).

The suicide of a pretrial detainee implicates the state's duty to provide medical care and its duty to provide protection from harm, and failing to provide pretrial detainees with medical care and adequate protection from their known suicidal impulses is a violation of the Fourteenth Amendment. *Shepard v. Hansford Cty.*, 110 F. Supp. 3d 696, 708 (N.D. Tex. 2015). "Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Hare v. City of Corinth*, 74 F.3d 633, 644–45 (5th

Cir. 1996)). A conditions-of-confinement claim is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644. When a plaintiff challenges a condition of confinement, courts apply the test established by the Supreme Court in *Bell v. Wolfish*. *Estate of Henson v. Wichita Cty.*, 795 F.3d 456, 463 (5th Cir. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). To succeed on a conditions-of-confinement claim based on inadequate medical care, a plaintiff must show that the level of medical care provided to the detainee was not reasonably related to a legitimate governmental objective and therefore constituted punishment in violation of the Fourteenth Amendment. *See Shepherd*, 591 F.3d at 455. If a plaintiff properly states a conditions-of-confinement claim, the plaintiff is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because intent may be inferred from the decision to expose a detainee to an unconstitutional condition. *Shepard*, 591 F.3d at 452. "A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc." *Id*. (citing *Scott v. Moore*, 114 F.3d 51, 53 n.2 (5th Cir. 1997)). However, in some cases, a condition may reflect an unstated or de facto policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." *Hare*, 74 F.3d at 645. "Proving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Shepard*, 591 F.3d at 452.

If the alleged harm is a particular act or omission by one or more officials, the action is properly characterized as an episodic-act-or-omission case. *See id*. In an episodic-act-or-omission case, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or

omission." *Scott*, 114 F.3d at 53. To state an episodic-act-or-omission claim, a pretrial detainee must show that an official acted with subjective deliberate indifference to the detainee's serious medical needs. *See Shepard*, 591 F.3d at 452 (citing *Hare*, 74 F.3d at 648). To prove deliberate indifference, a plaintiff must show that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that the official actually "dr[e]w the inference." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Additionally, the official must have "disregard[ed] that risk by failing to take reasonable measures to abate it."[4] *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (internal quotation omitted). Mere negligence is insufficient. *Hare*, 74 F.3d at 649–50. A plaintiff must show that officials refused to provide medical treatment, ignored the detainee's complaints, intentionally treated the detainee incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiffs allege Fourteenth Amendment violations under both a conditions-of-confinement theory and an episodic-act-or-omission theory, but it is somewhat unclear if Plaintiffs intended to bring both claims against all individual Defendants because Plaintiffs do not differentiate between the two types of claims. (*See* ECF 1 at 12–14). Defendants Shook, Howard, Rice, Hitchcock, and Vanover move to dismiss the claims against them on the grounds that the claims allege negligence and gross negligence and are not actionable, and Plaintiffs have not pleaded true conditions-of-confinement claims. (ECF 8 at 8–11). The Court will first determine what claims Plaintiffs bring

---

[4] Some cases require that the plaintiff demonstrate the "official subjectively intended that harm occur." *See Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001); *see also Sanchez v. Young Cty.*, 866 F.3d 274, 280 (5th Cir. 2017). However, the Fifth Circuit Court of Appeals recently clarified that the subjective intent element "is contrary to the weight of our case law and to the Supreme Court precedent from which our cases flow." *Garza v. City of Donna*, 922 F.3d 626, 634–35 (5th Cir. 2019). Thus, the Court does not consider this requirement.

against the individual Defendants. *See Hare*, 74 F.3d at 644–45. After determining the nature of the claims, the Court will apply the appropriate standard to determine whether Plaintiffs sufficiently pleaded their claims.

### i. Shook and Howard

Plaintiffs allege Shook and Howard conducted a suicide risk assessment on Martinez, during which Martinez cried, stated he had suicidal thoughts, asked for mental health treatment, and stated it would not be difficult to think of a way to kill himself. (ECF 1 at 5). Plaintiffs further allege that after the suicide risk assessment, Howard told Shook he believed Martinez needed assistance. (*Id*. at 7). Despite what they learned during the suicide risk assessment and Howard's belief that Martinez needed assistance, Plaintiffs claim Shook and Howard disregarded Martinez's known risk of suicide by:

1. Placing him in a single-person cell with multiple tie-off points;

2. Giving him the means to carry out his suicide by not confiscating his bedding;

3. Not instituting a suicide watch;

4. Denying medical or mental health treatment for Martinez when he asked for it and told them he intended to commit suicide;

5. Failing to ensure Martinez received constant observation due to his high risk of suicide; and

6. Alternatively, not informing the other Defendants about Martinez's suicidal tendencies.

(*Id*. at 13).

The Court finds Plaintiffs' claims against Shook and Howard are consistent with episodic-act-or-omission claims because Plaintiffs allege that Shook and Howard failed to take certain steps to protect Martinez from his suicidal tendencies. *See Campos v. Webb Cty.*, 597 F. App'x 787, 791–93 (5th Cir. 2015) (contrasting the Fifth Circuit Court of Appeals' *Shepherd* opinion, the rare

legitimate conditions-of-confinement case, with episodic-act-or-omission cases where plaintiffs complain of specific jail officials' acts or omissions); *see also Shepard*, 110 F. Supp. 3d at 714–15.

To sufficiently plead deliberate indifference, Plaintiffs must allege Shook and Howard (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) actually drew the inference; and (3) disregarded that risk by failing to take reasonable measures to abate it. *See Converse v. City of Kemah*, 961 F.3d 771, 775–76 (5th Cir. 2020). Viewing the facts in the light most favorable to Plaintiffs, Plaintiffs have sufficiently pleaded Shook and Howard were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, they actually drew that inference, and they deliberately disregarded the risk by refusing to provide medical treatment and ignoring Martinez's complaints. *See id*. at 776–80; *see also Arenas*, 922 F.3d at 620–21. The Court denies Shook and Howard's motion to dismiss.[5]

### ii.  Rice

Plaintiffs claim Rice disregarded Martinez's known risk of suicide by "failing to observe the video monitor which showed Martinez dying of suicide, or, in the alternative, watched Martinez prepare to commit suicide for over thirty minutes, then actually begin asphyxiating himself, while Rice did nothing." (ECF 1 at 13). Specifically, Plaintiffs assert that the surveillance

---

[5] The Court will not address Shook and Howard's request that the Court strike allegations based on negligence and gross negligence from the Complaint. (*See* ECF 8 at 6, 8–9). The conclusory request does not sufficiently identify the allegations to be stricken and includes only a non-exhaustive list of examples of allegations to be stricken. (*See id*. at 8–9). Further, Shook and Howard do not explain why any of the allegations actually listed should be stricken under Federal Rule of Civil Procedure 12(f) and the applicable caselaw. *See Augustus v. Bd. of Pub. Instruction of Escambia Cty.*, 306 F.2d 862, 868 (5th Cir. 1962) (motion to strike should be granted when the allegations to be stricken have no possible relation to the controversy); *see Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962) ("Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied.") (internal quotation omitted).

video Rice was supposed to be watching, or in the alternative, was actually watching, shows Martinez prepare a ligature, repeatedly test that the slip-knot would tighten, and take the noose on and off his neck multiple times before finally securing it to the toilet-area partition and lowering himself to the floor over a period of 30 minutes.[6] (*Id.* at 9).

The Court finds Plaintiffs' claims against Rice are consistent with episodic-act-or-omission claims because Plaintiffs allege Rice failed to take certain steps to protect Martinez from his suicidal tendencies. *See Campos*, 597 F. App'x at 791–93; *see also Shepard*, 110 F. Supp. 3d at 714–15. To sufficiently plead deliberate indifference, Plaintiffs must allege Rice (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) actually drew the inference; and (3) disregarded that risk by failing to take reasonable measures to abate it. *See Converse*, 961 F.3d at 775–76. Viewing the facts in the light most favorable to Plaintiffs, Plaintiffs have sufficiently pleaded Rice was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, he actually drew that inference, and he deliberately disregarded the risk by ignoring Martinez's suicidal behavior and doing nothing to help Martinez. *See id.* at 776–80; *see also Arenas*, 922 F.3d at 620–21. The Court denies Rice's motion to dismiss.[7]

### iii.  Hitchcock and Vanover

Plaintiffs allege Hitchcock and Vanover did not know Martinez was a suicide risk, and in the alternative, Shook and Howard informed Hitchcock and Vanover that Martinez was a suicide

---

[6] The Court notes that Plaintiffs are permitted to plead inconsistent statements and claims. *Leal v. McHugh*, 731 F.3d 405, 414 (5th Cir. 2013).

[7] The Court will not address Rice's request that the Court strike allegations based on negligence and gross negligence from the Complaint for the reasons previously stated. (*See* ECF 8 at 6, 8–9); *see supra* note 5.

risk and requested mental health treatment, but Hitchcock and Vanover did nothing and failed to observe Martinez's cell at intervals frequent enough to guard against suicide. (ECF 1 at 8, 13).

The Court finds Plaintiffs' claims against Hitchcock and Vanover are consistent with episodic-act-or-omission claims because Plaintiffs allege Hitchcock and Vanover failed to take certain steps to protect Martinez from his suicidal tendencies. *See Campos*, 597 F. App'x at 791–93; *see also Shepard*, 110 F. Supp. 3d at 714–15. To sufficiently plead deliberate indifference, Plaintiffs must allege Hitchcock and Vanover (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) actually drew the inference; and (3) disregarded that risk by failing to take reasonable measures to abate it. *See Converse*, 961 F.3d at 775–76.

Plaintiffs pleaded Shook and Howard told Hitchcock and Vanover that Martinez was a suicide risk and requested mental health treatment. Thus, viewing the facts in the light most favorable to Plaintiffs, Plaintiffs have sufficiently pleaded Hitchcock and Vanover had subjective knowledge that Martinez was at a substantial risk of committing suicide. *See id*. at 776. Whether Plaintiffs sufficiently pleaded Hitchcock and Vanover deliberately disregarded this risk is a closer call. Plaintiffs did not plead Hitchcock and Vanover knew Martinez's bedding and uniform had not been confiscated, knew that Martinez's cell had tie-off points, or like Rice, observed suicidal behavior while Martinez was in his cell. However, Plaintiffs did plead Hitchcock and Vanover did nothing to prevent Martinez's suicide and "fail[ed] to observe [Martinez's] cell at intervals frequently enough to guard against a suicide death, as they knew Martinez required." (ECF 1 at 13). Viewing the facts in the light most favorable to Plaintiffs, Plaintiffs have sufficiently pleaded that, by failing to take simple and reasonable precautions to observe Martinez appropriately, Hitchcock and Vanover displayed deliberate indifference to a substantial risk of serious harm to

Martinez. *See Converse*, 961 F.3d at 778–79 (citing *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 395–98 (5th Cir. 2000)); *see also Shepard*, 110 F. Supp. 3d at 711 (officer's failure to perform face-to-face observations of detainee placed on suicide watch every fifteen minutes was deliberately indifferent to detainee's right to protection from risk of suicide); *see also Nagle v. Gusman*, 61 F. Supp. 3d 609, 628–30 (E.D. La. 2014) (defendant acted with deliberate indifference by leaving suicidal pretrial detainee unobserved on at least three different occasions without taking any measures to protect detainee from harm). The Court denies Hitchcock and Vanover's motion to dismiss.[8, 9]

### iv.   Thomas and Dawson

Plaintiffs claim Thomas and Dawson "failed to supervise each of the other individual Defendants." (ECF 1 at 13). Plaintiffs allege:

> Thomas and Dawson knew that officers under their supervision regularly placed detainees at risk of suicide in dangerous cells, failed to start suicide watches, failed to confiscate bedding and uniforms, and only used video surveillance to observe inmates housed in the solitary confinement cells. Thomas and Dawson knew that each of these failures placed suicidal detainees at substantial risk of serious harm, but did nothing to prevent [their] subordinates from regularly confining detainees under these dangerous conditions.

(*Id*.). Plaintiffs further claim:

> Thomas and Dawson knew that the jail was overcrowded and understaffed, but did nothing to correct these obvious problems. Thomas and Dawson knew that understaffing would result in obvious problems like detainees being observed less frequently. Thomas and Dawson also knew, and told the press, that overcrowding would result in fewer detainees receiving timely medical or psychiatric treatment. Despite the obvious and recurring risks these conditions posed, and that they were personally aware of, Thomas and Dawson did nothing to correct them.

---

[8] The Court will not address Hitchcock and Vanover's request that the Court strike allegations based on negligence and gross negligence from the Complaint for the reasons previously stated. (*See* ECF 8 at 6, 8–9); *see supra* note 5.

[9] To the extent Plaintiffs intended to bring conditions-of-confinement claims against Shook, Howard, Rice, Hitchcock, and Vanover, the Court grants Shook, Howard, Rice, Hitchcock, and Vanover's motion to dismiss as to any such conditions-of-confinement claims.

(*Id*.).

Defendants Thomas and Dawson move to dismiss the claims against them on the grounds that Plaintiffs have not pleaded the facts necessary to state a claim for failure to train or supervise, the claims allege negligence and gross negligence and are not actionable, and Plaintiffs have not pleaded true conditions-of-confinement claims. (*See* ECF 7 at 10–18).

First, the Court finds Plaintiffs fail to state a conditions-of-confinement claim against Thomas and Dawson. As stated above, to prevail on a conditions-of-confinement claim, a plaintiff must show "(1) 'a rule or restriction or ... the existence of an identifiable intended condition or practice ... [or] that the jail official's acts or omissions were sufficiently extended or pervasive'; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the pretrial detainee's] constitutional rights." *Duvall v. Dallas Cty.*, 631 F.3d 203, 207 (5th Cir. 2011) (quoting *Hare*, 74 F.3d at 645). With respect to the first requirement, Plaintiffs have not identified an explicit policy. Thus, Plaintiffs must point to a de facto policy. *See Estate of Henson*, 795 F.3d at 465 (stating that in the absence of an explicit policy, a plaintiff must show a de facto policy existed). To state a conditions-of-confinement claim based on Thomas and Dawson's implementation of an unstated rule or de facto policy, Plaintiffs must plead Thomas and Dawson's "acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." *Id*. (quoting *Hare*, 74 F.3d at 645).

Plaintiffs pleaded Thomas and Dawson knew of the history of suicides at Potter County Jail and "how Potter County employees failed to prevent them," "but did nothing differently" and failed to "remedy this disturbing pattern." (ECF 1 at 12). Plaintiffs also pleaded Thomas and Dawson failed to prevent officers under their supervision from regularly placing detainees at risk

of suicide in dangerous cells, failing to start suicide watches, failing to confiscate bedding and uniforms, and only using video surveillance to observe inmates housed in the solitary confinement cells. (*Id*. at 13). However, Plaintiffs pleaded no specific facts showing Thomas and Dawson's alleged failures were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to constitute an intended condition or practice. These conclusory allegations do not support a claim that Thomas and Dawson's acts or omissions constitute an unstated rule or de facto policy. With respect to Plaintiffs' claims that Thomas and Dawson knew that the jail was overcrowded and understaffed and did nothing to correct the problems, Plaintiffs pleaded no specific facts showing overcrowding or understaffing played a role in Martinez's death. Plaintiffs pleaded Rice failed to monitor surveillance video of Martinez in his cell partially due to inadequate staffing, but this allegation is conclusory and fails to explain how understaffing prevented Rice from acting. As stated above, Plaintiffs fail to state a conditions-of-confinement claim against Thomas and Dawson.

Second, the Court finds that rather than episodic-act-or-omission claims, Plaintiffs seem to bring "failure to supervise" claims against Thomas and Dawson. "A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009)). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer*, 511 U.S. at 837). Proof of deliberate difference requires

the showing of a pattern of similar violations arising from training or supervision that is so clearly inadequate as to be obviously likely to result in a constitutional violation. *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010) (citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)). "Stated another way, to establish deliberate indifference, a plaintiff must show at least a pattern of violations (fairly similar to what ultimately transpired) so that the failure of the [supervisor] to respond with…better supervision…reflects a deliberate or conscious choice to endanger constitutional rights." *Ngoc-Chi Huynh v. City of Houston*, No. CIV.A. H-10-1303, 2011 WL 6250792, at *8 (S.D. Tex. Dec. 12, 2011).

The Court finds Plaintiffs have not adequately pleaded a failure to supervise claim against Thomas and Dawson. As previously stated, Plaintiffs' allegations of failure to supervise state that Thomas and Dawson "knew" that officers under their supervision "regularly" failed to take certain precautions when dealing with detainees. (ECF 1 at 13). These allegations are too conclusory to adequately plead a pattern of violations or that Thomas and Dawson knew of their subordinate officers' alleged improper conduct, such that Thomas and Dawson were deliberately indifferent to the same. *See Poloceno v. Dallas Indep. Sch. Dist.*, No. 3:18-CV-1284-S, 2019 WL 2568681, at *5–6 (N.D. Tex. June 21, 2019) (vague and unsupported allegations of a pattern and officials' knowledge of prior incidents were insufficient to state failure to train claim); *see also Ybarra-Fuentes v. City of Rosenberg*, No. CV H-18-1824, 2018 WL 6019177, at *8 (S.D. Tex. Nov. 16, 2018) (conclusory allegation that pretrial detainee suicide at issue was "only one of numerous instances where [jail] has failed to provide needed care" was insufficient to state failure to supervise claim against police chief); *see also Torres v. Livingston*, No. 6:17CV196, 2018 WL 4655786, at *8 (E.D. Tex. July 23, 2018) (conclusory assertions that pattern existed were insufficient to state failure to supervise claim); *see also Scott v. White*, No. 1:16-CV-1287-RP,

2018 WL 2014093, at *9 (W.D. Tex. Apr. 30, 2018) (three incidents of allegedly excessive force that occurred over the four years prior to incident at issue were insufficient to state failure to train or supervise claim); *see also Escobedo v. Rowe*, No. 5:17-CV-273-BQ, 2018 WL 2090748, at *3 (N.D. Tex. Apr. 5, 2018), *adopted by* No. 5:17-CV-273-C, 2018 WL 2089349 (N.D. Tex. May 4, 2018) (allegations that sheriff "allow[ed] illegal searches and false arrests" were unsupported conclusory allegations insufficient to state failure to supervise claim against sheriff); *see also Tipps v. McCraw*, No. SA-12-CV-00766-DAE, 2013 WL 5929705, at *4–5 (W.D. Tex. Nov. 1, 2013) (allegations that Department of Public Safety director had "knowledge" of "prior inappropriate behavior" of two subordinates were insufficient to state failure to supervise claim against director, and "specific instances" of constitutional violations by the two subordinates, rather than vague and conclusory allegations, were required).

Plaintiffs mention the "single incident exception" in their briefing when discussing the failure to supervise claims against Thomas and Dawson and cite *Brown v. Bryan Cty.* (ECF 22 at 26–27). "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which [a municipality] may be liable." *Brown v. Bryan Cty.*, 219 F.3d 450, 462 (5th Cir. 2000); *see Estate of Davis*, 406 F.3d at 385–86 (exception requires plaintiff to show the highly predictable consequence of failure to train or supervise would result in specific injury suffered, and the failure to train or supervise represented the moving force behind the constitutional violation). However, the Court must look to the C*omplaint* to determine whether Plaintiffs have sufficiently pleaded a failure to supervise claim based on the single incident exception, and the Court cannot conclude Plaintiffs have done so.[10] (*See* ECF 1 at 13–14) (alleging a vague and "regular" pattern of dangerous conduct by subordinate officers rather than a single incident). Even

_____

[10] The Court also notes Plaintiffs seem to disavow the exception in their response. (ECF 22 at 26).

if it appeared Plaintiffs attempted to plead such an exception, the exception is narrow, and the Fifth

Circuit Court of Appeals has noted the difference between a complete failure to train or supervise

and a failure to train or supervise in a limited area. *See Estate of Davis*, 406 F.3d at 385–86.

The Court finds Plaintiffs do not allege failure to train claims against Thomas and Dawson

individually, and thus will not address Thomas and Dawson's argument regarding failure to train.

(*See* ECF 1 at 12–14). The Court grants Thomas and Dawson's motion to dismiss.

**B.  Plaintiffs' Fourteenth Amendment Claims Under Section 1983 Against Potter County**

**i.   Official Custom or Policy**

Plaintiffs allege Defendant Potter County is liable for Martinez's death because of its

policies, practices, or customs. (*Id*. at 14–15). Plaintiffs pleaded the following nine policies,

practices, or customs they believe caused Martinez's death:

1. Regularly confining inmates at high risk of suicide in dangerous conditions of confinement, such as the solitary confinement cell Martinez was housed in that had multiple tie-off points, could not be easily physically observed, and was designed to house only a single detainee;

2. Overcrowding the jail and housing detainees who could be otherwise released on bond (or on personal recognizance) when officers are unable to adequately observe all detainees and resources are too "thin" to ensure all detainees receive appropriate medical attention;

3.  Failing to continuously observe detainees at high risk of suicide;

4. Housing detainees at risk of suicide in single-person cells, including the solitary confinement cell Martinez was placed in;

5. Housing detainees at risk of suicide in cells with tie-off points, including the solitary confinement cell Martinez was placed in;

6. Routinely failing to observe suicidal detainees at intervals frequent enough to prevent suicide deaths and other serious medical emergencies;

7. Failing to obtain psychiatric services for actively suicidal detainees;

8. Housing detainees at risk of suicide in cells where in-person observation is difficult; and

9. Using video surveillance as a substitute for in-person observation of detainees (especially detainees known to be suicidal).

(*Id*.).

Potter County seeks dismissal of this claim on the basis that Plaintiffs have not pleaded an official policy or a custom existed. (*See* ECF 6 at 11–18). Specifically, Potter County argues Plaintiffs merely pleaded allegations of the individual Defendants' negligence, failed to plead any of the policies or customs were officially adopted, and failed to plead prior incidents sufficiently close in time, similar, and specific to plead a custom existed. (*See id*.).

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations." *Id*. at 579. However, a policy may also be evidenced by custom when "a persistent, widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*. (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

Plaintiffs do not allege Potter County has any official written or articulated policy relating to their claims. However, Plaintiffs allege the nine identified policies, practices, or customs "were a proximate cause of several prior suicide deaths in addition to Martinez." (ECF 1 at 15). Viewing the Complaint's facts in the light most favorable to Plaintiffs, the Court construes this as a reference to the alleged five prior suicides at Potter County Jail identified earlier in the Complaint

and as an allegation that the nine identified policies, practices, or customs are actually *patterns* of conduct that rise to the level of official policies. (*See id*. at 11–12). "A pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [a municipality's] employees.'" *Id*. (quoting *Webster*, 735 F.2d at 842). A pattern requires "similarity and specificity" and "sufficiently numerous prior incidents," as opposed to "isolated instances." *Id*. at 851.

The only specifics given regarding the alleged five prior suicides are as follows: three of the suicides involved use of a bed sheet as a ligature and two of those suicides occurred in a single-person cell. (ECF 1 at 11–12). No details are given for two of the alleged prior suicides other than the suicides occurred by hanging in a cell. (*Id*. at 11). Plaintiffs do not specifically allege Potter County had a pattern of providing inmates, suicidal or otherwise, with bed sheets, although such an allegation could be inferred based on the general facts alleged.[11] (*See id*. at 14–15). Plaintiffs do however allege a pattern of "[h]ousing detainees at risk of suicide in single-person cells." (*Id*. at 15). Even assuming the two prior incidents in 2001 and 2008 involving suicide in a single-person cell are sufficiently specific and similar to be considered, two prior incidents are insufficient to show a pattern regarding single-person cells that rises to the level of an official policy. *See*

---

[11] If the Court infers an allegation that Potter County had a pattern regarding bed sheets, the relevant alleged prior incidents would include the 2001 and 2008 incidents that involved the use of bed sheets as ligatures, as well as the 1993 incident that involved a bed sheet as a ligature. Such an inference would require the Court to consider whether three suicides spanning a period of approximately 27 years prior to this lawsuit being filed are sufficient to constitute a pattern regarding bed sheets that rises to the level of an official policy.

*Peterson*, 588 F.3d at 847–48, 850–52. Likewise, even if the Court considers the 1993 incident of suicide involving a bed sheet, along with the 2001 and 2008 incidents of suicide involving bed sheets, three prior incidents over that time span are insufficient to show a pattern regarding bed sheets that rises to the level of an official policy.

Plaintiffs rely on *Jacobs* and argue in their response that a policy can be "so obviously dangerous that a prior pattern is not required." (ECF 22 at 24) (citing *Jacobs*, 228 F.3d at 396). However, as Plaintiffs seem to acknowledge, the portion of *Jacobs* to which they cite involved a claim against a sheriff individually and whether the sheriff was entitled to qualified immunity. The *Jacobs* opinion did not address the claims against the sheriff in his official capacity or any claims against a municipality. *See Jacobs*, 228 F.3d at 392. The Court finds Plaintiffs have not adequately pleaded a claim against Potter County based on an official policy or a custom and grants Potter County's motion to dismiss with respect to this claim.

ii.   **Failure to Train**

Plaintiffs allege "Potter County failed to provide adequate training to its jailers on suicide prevention in the following ways:"

1. Failing to train jailers when to begin a suicide watch, and that they must be observed;

2. Failing to train officers about accommodating detainees with disabilities;

3. Failing to train jailers not to house detainees at risk of suicide in single-person cells;

4. Failing to train jailers not to house detainees at risk of suicide in cells with tie-off points;

5. Failing to train jailers not to issue bedding to detainees at risk of suicide (or that they must confiscate bedding from detainees known to be at risk of suicide); and

6. Failing to train jailers that video observation is ineffective at preventing suicide.

(ECF 1 at 15–16). Plaintiffs further allege that policymakers and supervisors, including Thomas and Dawson, knew that "absent proper training officers were unlikely to be able to prevent suicide deaths," but "Potter County failed to provide appropriate training." (*Id*. at 16). Potter County seeks dismissal of this claim on the basis that Plaintiffs' allegations are conclusory and fail to identify similar prior incidents sufficiently close in time. (*See* ECF 6 at 18).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizen's rights may rise to the level of an official government policy for purposes of § 1983." *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 655 (N.D. Tex. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "An inadequate training program or a failure to train, once shown to be an official policy or custom of which a municipality has knowledge, may serve as the basis for § 1983 liability only where inadequate training amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *Id*. To state a claim against a municipality based on a policy of inadequate training, a plaintiff must demonstrate (1) the municipality's training policy was inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violation. *See id*. "The requisite deliberate indifference in an inadequate-training context may be shown by a plaintiff in one of two ways." *Id*. First, and more typically, a plaintiff may plead the municipality had notice of a pattern of violations fairly similar to what ultimately transpired when the constitutional violation occurred in the case at issue. *See id*. at 656. "Establishing deliberate indifference [under the first approach] generally requires a showing that the municipality failed to change its training methods in the face of several incidents in which training methods caused constitutional violations." *Id*. (quoting *Cardenas v. Lee Cty.*, 569 F. App'x 252, 257 (5th Cir. 2014)). Second, a plaintiff may plead the

municipality was deliberately indifferent "based on a single incident in a narrow range of circumstances." *Id*. The single-incident exception is a narrow one and requires a plaintiff to show that "the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id*. (quoting *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)).

The Court finds Plaintiffs have not adequately pleaded a failure to train claim against Potter County based on a pattern of similar violations because Plaintiffs have not alleged facts to support that a pattern of similar constitutional violations caused by inadequate training methods exists. Viewing the Complaint's facts in the light most favorable to Plaintiffs, Plaintiffs pleaded in one part of the Complaint that Thomas and Dawson "knew" that officers under their supervision "regularly" failed to take certain precautions when dealing with detainees and that "inadequate training…was a recurring problem," and later in the Complaint pleaded that training on the same precautions—not housing detainees in single-person cells, suicide watches, confiscating bedding, and not relying solely on video surveillance to observe detainees—is inadequate. (*See* ECF 1 at 8, 13, 15–16). However, Plaintiffs' allegations are too conclusory to adequately plead Potter County had notice of a pattern of similar constitutional violations caused by inadequate training methods so as to support a claim that Potter County was deliberately indifferent to the inadequacy of its training program. *See Hill v. Turknett*, No. 3:19-CV-2871-K, 2020 WL 3872743, at *6 (N.D. Tex. July 9, 2020) (conclusory allegations that county was on notice of pattern were insufficient to support failure to train claim against county); *see also Jackson v. Valdez*, No. 3:18-CV-2935-X-BH, 2020 WL 1428775, at *9–10 (N.D. Tex. Feb. 27, 2020), *adopted by* No. 3:18-CV-02935-X-BH, 2020 WL 1339923 (N.D. Tex. March 23, 2020) (allegations regarding county's alleged failures to train were too conclusory to state failure to train claim against county or show

23

"policymakers were repeatedly put on notice that additional training or supervision for jail staff was needed"); *see also Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 845–46 (S.D. Tex. 2011) (bare assertions that pattern of violations due to insufficient training existed were insufficient to state failure to train claim against city).[12]

Plaintiffs mention the "single incident exception" in their briefing when discussing the failure to train claims (ECF 22 at 26), but the Court cannot conclude Plaintiffs pleaded facts in their Complaint to support such an exception. *See Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) ("the exception is generally reserved for those cases in which the government actor was provided no training whatsoever"); *see also Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1009 (W.D. Tex. 2019) (discussing narrow exception and insufficiency of allegations that officers received improper training, as opposed to no training whatsoever). The Court finds Plaintiffs have not adequately pleaded a failure to train claim against Potter County and grants Potter County's motion to dismiss with respect to this claim.

### iii.    Conditions of Confinement

Plaintiffs allege "Potter County put Martinez at risk of death" by allowing the following "dangerous conditions:"

1. Understaffing;

2. Overcrowding; and

3. The physical design of Martinez's cell that made it difficult to observe, despite including many tie-off points.

---

[12] Even if the Court were to consider the alleged five prior suicides at Potter County Jail, the failure to train claim against Potter County would fail. The Complaint merely states "given the lack of training…Martinez was not the first inmate to die of suicide in the Potter County Jail." (ECF 1 at 11). There are no specific facts alleged regarding the prior suicides that could give rise to an inference that Potter County was aware officers lacked adequate training and were indifferent to the risks that could result from inadequate training.

(ECF 1 at 16). Potter County does not directly address Plaintiffs' conditions-of-confinement claims against it. Potter County attacks Plaintiffs' ability to show an official custom or policy, but does not address the *Bell* test, which controls conditions-of-confinement claims as previously discussed, or its requirement that the condition be "arbitrary or purposeless" or "not reasonably related to a legitimate goal."[13] *Shepherd*, 591 F.3d at 452. Accordingly, the Court denies Potter County's motion to the extent it seeks to dismiss Plaintiffs' conditions-of-confinement claim against it.

### C.  Plaintiffs' ADA and RA Claims Against Potter County

Plaintiffs allege Potter County intentionally discriminated against Martinez in violation of the ADA and RA by denying him reasonable accommodations such as:

1.  Medical and psychiatric treatment;

2.  Modifications to his cell (such as removing tie-off points, or housing him with a cell mate);

3.  Confiscating his uniform and bedding until he could receive a psychiatric evaluation and treatment;

4.  Frequent observation to guard against death by suicide;

5.  Suicide watch;

6.  Safe housing; and

7.  Adequate staffing.

(ECF 1 at 17–18). Potter County seeks dismissal of this claim on the basis that Plaintiffs failed to sufficiently plead Martinez was discriminated against because of his alleged disability and failed to identify the programs to which Martinez was denied access. (*See* ECF 6 at 20–23).

---

[13] Although Potter County addresses Plaintiffs' conditions-of-confinement claims in its reply brief, the Court declines to consider any argument as to these claims because Potter County addressed the claims for the first time in its reply brief. *See Cavazos v. JP Morgan Chase Bank Nat. Ass'n*, 388 F. App'x 398, 399 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief, even by pro se litigants...are waived.") (internal quotation omitted); *see also Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 771 (N.D. Tex. 2012); *see also Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 551 (N.D. Tex. 2006).

"To make out a prima facie case under Title II or the Rehabilitation Act, a plaintiff must show '(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.'" *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). "In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Id*. at 723–24 (quoting *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)). "A claim for failure to accommodate under the ADA has the following elements: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations." *Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015). The same elements apply to Plaintiffs' RA claims. *Id*.

It appears Plaintiffs allege a failure-to-accommodate theory of liability. (*See* ECF 1 at 17–18). Potter County's motion and briefing do not identify the elements of a failure-to-accommodate claim under the ADA and RA, much less address whether Plaintiffs sufficiently pleaded such elements.[14] Accordingly, the Court denies Potter County's motion to the extent it seeks to dismiss Plaintiffs' ADA and RA claims against it. [15]

---

[14] In its reply brief, Potter County identifies the elements of a failure-to-accommodate claim under the ADA and RA and argues Plaintiffs have not adequately pleaded intentional discrimination in the failure-to-accommodate context. (*See* ECF 25 at 10–15). As previously stated, the Court will not consider arguments raised for the first time

### D.  Leave to Amend

Plaintiffs request that if the Court grants Defendants' motions, they be permitted to replead. The Court acknowledges Plaintiffs' argument that discovery would reveal information and details regarding potential policies and prior misconduct currently unavailable to Plaintiffs. (*See* ECF 22 at 37). In support of their argument that discovery should be conducted before they are required to replead, Plaintiffs cite *Thomas*. (*Id*.) (citing *Thomas*, 800 F. Supp. 2d at 842–43). In *Thomas*, the court stated that "[i]n the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas*, 800 F. Supp. 2d at 842. Thus, the court held "only minimal factual allegations should be required at the motion to dismiss stage." *Id*. at 842–43. But Plaintiffs fail to note that *Thomas* also recognized this District is among those that has viewed *Twombly* and *Iqbal* as altering the pleading requirements for municipal liability claims. *Id*. at 842. Further, as Magistrate Judge Rutherford noted in *Edwards*, this District has not universally accepted *Thomas'* middle-ground approach, and the Fifth Circuit Court of Appeals has not endorsed it. *Edwards v. Oliver*, No. 3:17-CV-01208-M-BT, 2019 WL 4603794, at *3 (N.D. Tex. Aug. 12, 2019), *adopted by* 3:17-cv-01208-M-BT, 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019) (citing *Speck v. Wiginton*, 606 F. App'x 733, 735–36 (5th Cir. 2015) (district court did not "err in applying the ordinary pleading standard to failure to train allegations" against officers in their official capacity and "correctly stated that the proper

---

in Potter County's reply brief. *See supra* note 13. The Court notes that Potter County's new argument with respect to Plaintiffs' failure-to-accommodate claim relies on *Smith v. Harris Cty.*, 956 F.3d 311 (5th Cir. 2020), which was issued one day after Potter County filed its motion and brief in support. However, as *Smith* notes, the Fifth Circuit Court of Appeals discussed what constitutes intentional discrimination in the failure-to-accommodate context in *Cadena* (*see* 946 F.3d at 723–27), authority available to Potter County at the time it filed its motion and brief in support, but to which it did not cite.

[15] The Court will not address Potter County's request that the Court strike allegations based on negligence and gross negligence from the Complaint for the reasons previously stated. (*See* ECF 6 at 19–20); *see supra* note 5.

standard was Rule 8" as interpreted by *Twombly* and *Iqbal*); *Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) (applying Rule 8 as interpreted by *Twombly* and affirming dismissal of failure to train claim against city)).

Nevertheless, courts often grant plaintiffs one opportunity to replead, unless it appears that the plaintiff cannot cure the initial deficiencies in the pleading. *Rodriguez v. S. Health Partners, Inc.*, No. 3:20-CV-0045-D, 2020 WL 2928486, at *14 (N.D. Tex. June 3, 2020) (dismissing claims against county and individual doctors and granting plaintiff leave to file an amended complaint as to the defects the court identified); *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)). There is no indication Plaintiffs cannot, or are unwilling to, cure the defects the Court has identified. Thus, the Court grants Plaintiffs leave to file an amended complaint as to the defects identified within 21 days of the date this order is filed.

IT IS SO ORDERED.

ENTERED October 30, 2020.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE