**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| CINDA LEE LOVATO, individually, on | § | |
| Behalf of all wrongful death beneficiaries, | § | |
| And on behalf of the ESTATE OF | § | |
| DANIEL LUIS MARTINEZ, and | § | |
| MARK MARTINEZ, individually, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| AMY HITCHCOCK, TANNER VANOVER, | § | |
| JARED RICE, B. HOWARD, S. SHOOK, | § | CIVIL ACTION NO. 2:20-CV-00070-BR |
| BRIAN THOMAS, and LISA DAWSON, | § | |
| in their individual capacities, and | § | |
| POTTER COUNTY, TEXAS, | § | |
| *Defendants.* | § | |

**POTTER COUNTY DEFENDANTS'**
**CONSOLIDATED MOTION TO DISMISS**

Respectfully submitted by:

MATT D. MATZNER
Texas Bar No. 00797022
MORGAN DAY VAUGHAN
Texas Bar No. 24060769
CRENSHAW, DUPREE & MILAM, L.L.P.
P.O. Box 64479, Lubbock, Texas 79464-4479
Telephone: (806) 762-5281
Facsimile: (806) 762-3510
mmatzner@cdmlaw.com
mvaughan@cdmlaw.com
***Counsel for Defendants***

-And-

ALEX YARBROUGH
Texas Bar No. 24079615
RINEY & MAYFIELD LLP
320 S. Polk Street, Suite 600
Amarillo, Texas 79101
Telephone: (806) 468-3200
Facsimile: (806) 376-4509
ayarbrough@rineymayfield.com
***Counsel for Defendant Sara Shook***

711703v.1

## TABLE OF CONTENTS

Table of Contents ................................................................................................ ii

Table of Authorities ........................................................................................... iv

I.    Summary ........................................................................................................1

II.   Background ....................................................................................................2

III.  Standard of Review ......................................................................................5

IV.   To the Extent the Plaintiffs Assert Conditions-of-Confinement Claims Against Hitchcock, Vanover, Rice, Howard, and Shook These Claims Should Be Dismissed ..........7

      A.    Conditions-of-Confinement Claims Versus Episodic-Act-or-Omissions Claims ................................................................7

      B.    Hitchcock, Vanover, Rice, Howard, and Shook Seek The Dismissal of Any Conditions-of-Confinement Claims Brought Against Them ....................................9

V.    The Plaintiffs Have Not Pleaded Facts Which Overcome the Defense of Qualified Immunity Asserted by Hitchcock, Vanover, Rice, Howard, and Shook to their Fourteenth Amendment Denial of Medical Attention Claims ............................................10

      A.    The Denial of Medical Attention Claim Asserted Against Jared Rice Should Be Dismissed ....................................................11

      B.    The Denial of Medical Attention Claims Asserted Against Brett Howard Should Be Dismissed ................................................14

      C.    The Denial of Medical Attention Claim Against Sara Shook Should Be Dismissed ....................................................................17

      D.    The Denial of Medical Attention Claims Asserted Against Amy Hitchcock and Tanner Vanover Should Be Dismissed ............................18

VI.   The Fourteenth Amendment Conditions-of-Confinement Claim Made Against Supervisors Dawson and Thomas Should Be Dismissed ....................................19

VII.  The Fourteenth Amendment Denial of Medical Attention and Failure to Supervise Claims Made Against Dawson and Thomas Should Be Dismissed ....................................23

VIII. The Fourteenth Amendment Pattern, Practice, and Custom Claim Asserted Against Potter County Should Be Dismissed ........................................................26

711703v.1

IX.   The Failure to Train Claim Asserted Against Potter County Should Be Dismissed ............32

X.    The Fourteenth Amendment Conditions-of-Confinement Claim Asserted Against Potter County Should be Dismissed ......................................................................................36

XI.   The Americans with Disabilities Act and Rehabilitation Act Claim Asserted Against Potter County Should be Dismissed ..........................................................................................39

XII.  Conclusion ...............................................................................................................................43

Certificate of Service .........................................................................................................................44

711703v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Dallas Cty. Tex.*,
     286 Fed. App'x 850 (5th Cir. 2008) ................................................................. 18

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ........................................................................... 6, 29

*Baldwin v. Dorsey*,
     964 F.3d 320 (5th Cir. 2020) ..................................................................... 16

*Baughman v. Hickman*,
     935 F.3d 302 (5th Cir. 2019) ..................................................................... 16

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007) .............................................................................. 6

*Bell v. Wolfish*,
     441 U.S. 520 (1979) ................................................................. 7, 36, 37, 38

*Bennett v. City of Slidell*,
     728 F.2d 762 (5th Cir. 1984) ..................................................................... 21

*Blackburn v. City of Marshall*,
     42 F.3d 925 (5th Cir. 1995) ....................................................................... 6

*Blakely v. Andrade*,
     360 F. Supp. 3d 453 (N.D. Tex. 2019) ............................................................. 4

*Brown v. Bryan Cty.*,
     219 F.3d 450 (5th Cir. 2000) ..................................................................... 33

*Brown v. Callahan*,
     623 F.3d 249 (5th Cir. 2010) ..................................................................... 22

*Burge v. St. Tammany Parish*,
     336 F.3d 363 (5th Cir. 2003) ..................................................................... 28

*Cadena v. El Paso Cty.*,
     946 F.3d 717 (5th Cir. 2020) ................................................................. 39, 40

*Campbell v. City of San Antonio*,
     43 F.3d 973 (5th Cir. 1995) ................................................................. 20, 21

iv

*City of Canton v. Harris*,
    489 U.S. 378 (1989)................................................................................... 27

*City of Oklahoma City v. Tuttle*,
    471 U.S. 808 (1985)................................................................................... 27

*Colle v. Brazos Cty., Tex.*,
    981 F.2d 237 (5th Cir. 1993) .................................................................... 29

*Connick v. Thompson*,
    563 U.S. 51 (2011)..................................................................................... 32

*Converse v. City of Kemah, Tex.*,
    961 F.3d 771 (5th Cir. 2020) ............................................................... 12, 13

*Conway v. Vannoy*,
    No. CV 18-33-JWD-EWD, 2019 WL 1317721 (M.D. La. Mar. 22, 2019)........................ 24

*Crowe v. Henry*,
    43 F.3d 198 (5th Cir. 1995) ........................................................................ 5

*Daniels v. Williams*,
    474 U.S. 327 (1986)................................................................................... 28

*Domino v. Tex. Dep't of Criminal Justice*,
    239 F.3d 752 (5th Cir. 2001) ......................................................... 10, 14, 15, 31

*Duvall v. Dallas Cty., Tex.*,
    631 F.3d 203 (5th Cir. 2011) .................................................................... 20

*Encompass Office Sols., Inc. v. Connecticut Gen. Life Ins. Co.*,
    No. 3:11-CV-02487-L, 2013 WL 1194392 (N.D. Tex. Mar. 25, 2013) ............................... 6

*Escobedo v. Rowe*,
    No. 5:17-CV-273-BQ, 2018 WL 2090748 (N.D. Tex. Apr. 5, 2018) ................................. 25

*Estate of Bonilla v. Orange Cty., Tex.*,
    982 F.3d 298 (5th Cir. 2020) ............................................................... passim

*Estate of Henson v. Wichita Cty., Tex.*,
    795 F.3d 456 (5th Cir. 2015) .................................................................... 7, 37

*Estate of Munoz by Ruelas v. Ford*,
    402 F. Supp. 3d 344 (E.D. Tex. 2019)........................................................ 14, 19

v

*Estate of Pollard v. Hood Cty., Tex.*,
    579 Fed. App'x 260 (5th Cir. 2014) ................................................... 14

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ....................................................................... 10, 15

*Flores v. Cty. of Hardeman, Tex.*,
    124 F.3d 736 (5th Cir. 1997) ......................................................... 8, 36

*Floyd v. City of Kenner*,
    351 F. App'x 890 (5th Cir. 2009) ....................................................... 14

*Fraire v. City of Arlington*,
    957 F.2d 1268 (5th Cir. 1992) ........................................................... 20

*Garcia v. City of Lubbock*,
    No. 5:20-CV-053-H, Doc. 59 (N.D. Tex. June 26, 2020) ................... 18

*Garrett v. Commonwealth Mortg. Corp. of America*,
    938 F.2d 591 (5th Cir. 1991) .............................................................. 7

*Garza v. City of Donna*,
    922 F.3d 626 (5th Cir. 2019) ................................................... 9, 36, 38

*Gates v. Texas Dep't of Prot. & Reg. Servs.*,
    537 F.3d 404 (5th Cir. 2008) ................................................. 19, 22, 23

*Gobert v. Caldwell*,
    463 F.3d 339 (5th Cir. 2006) ....................................................... 22, 26

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) .............................................................. 6

*Goodman v. Harris Cty.*,
    571 F.3d 388 (5th Cir. 2009) ............................................................. 24

*Gray v. Brazoria Cty.*,
    No. 3:16-CV-109, 2017 WL 713797 (S.D. Tex. Feb. 23, 2017) ... 29, 30

*Green v. Harris Cty., Tex.*,
    No. CV H-16-893, 2019 WL 2617429 (S.D. Tex. June 26, 2019) ...... 18

*Hare v. City of Corinth*,
    74 F.3d 633 (5th Cir. 1996) ....................................................... 7, 10, 13

711703v.1

*Hester v. Dallas Cty. Jail,*
    No. 3:11-CV-3099-B-BH, 2012 WL 1430539 (N.D. Tex. Mar. 6, 2012) ......................... 21

*Hobart v. City of Stafford,*
    784 F. Supp. 2d 732 (S.D. Tex. 2011) ................................................................. 23

*Huggins Realty, Inc. v. FNC, Inc.,*
    634 F.3d 787 (5th Cir. 2011) ............................................................................. 6

*Hyatt v. Thomas,*
    843 F.3d 172 (5th Cir. 2016) ................................................................. 10, 16, 17

*Jackson v. Valdez,*
    No. 3:18-CV-2935-X-BH, 2020 WL 1428775 (N.D. Tex. Feb. 27, 2020) ....................... 25

*Jacobs v. W. Feliciana Sheriff's Dep't,*
    228 F.3d 388 (5th Cir. 2000) ........................................................................ 14, 18

*Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio,*
    633 Fed. App'x 214 (5th Cir. 2015) ................................................................... 40

*Jones v. Alcoa, Inc.,*
    339 F.3d 359 (5th Cir. 2003) ............................................................................. 6

*Lampkin v. City of Nacogdoches,*
    7 F.3d 430 (5th Cir. 1993) ............................................................................... 11

*Lewis v. Sec'y of Pub. Safety & Corr.,*
    870 F.3d 365 (5th Cir. 2017) ............................................................................ 19

*Lovelace v. Software Spectrum Inc.,*
    78 F.3d 1015 (5th Cir. 1996) ......................................................................... 5, 6

*Malone v. City of Fort Worth, Tex.,*
    297 F. Supp. 3d 645 (N.D. Tex. 2018) ............................................................... 33

*McClendon v. City of Columbia,*
    305 F.3d 314 (5th Cir. 2002) ............................................................................ 13

*McConney v. City of Houston,*
    863 F.2d 1180 (5th Cir. 1989) .......................................................................... 21

*Melton v. Dallas Area Rapid Transit,*
    391 F.3d 669 (5th Cir. 2004) ............................................................................ 39

*Milam v. City of San Antonio,*
    113 Fed. App'x 622 (5th Cir. 2004) ................................................................... 29

*Miraglia v. Bd. of Supervisors of La. State Museum,*
    901 F.3d 565 (5th Cir. 2008) ........................................................................... 40

*Miranda v. Cty. of Lake,*
    900 F.3d 335 (7th Cir. 2018) ........................................................................... 16

*Monell v. Dep't of Soc. Servs. of City of New York,*
    436 U.S. 658 (1978) ......................................................................................... 26

*Mullenix v. Luna,*
    577 U.S. 7 (2015) ............................................................................................. 11

*Ngoc-Chi Huyh v. City of Houston,*
    No. CIV. A. H-10-1303, 2011 WL 6250792 (S.D. Tex. Dec 12, 2011) ............ 23

*Nichols v. Brazos Cty.,*
    No. CV H-19-2820,2020 WL 956239 (S.D. Tex. Feb. 26, 2020) ...................... 38

*Okon v. Harris Cty. Hosp. Dist.,*
    426 Fed. App'x 312 (5th Cir. 2011) ................................................................. 29

*Pena v. City of Rio Grande City,*
    879 F.3d 613 (5th Cir. 2018) ........................................................................... 33

*Perniciaro v. Lea,*
    901 F.3d 241 (5th Cir. 2018) ........................................................................... 18

*Peterson v. City of Fort Worth, Texas,*
    588 F.3d 838 (5th Cir. 2009) ..................................................................... 22, 30

*Petzold v. Rostollan,*
    946 F.3d 242 (5th Cir. 2019) ........................................................................... 18

*Pineda v. City of Houston,*
    291 F.3d 325 (5th Cir. 2002) ............................................................... 26, 28, 29

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001) ............................................................... 21, 26, 29

*Poloceno v. Dallas Indep. Sch. Dist.,*
    No. 3:18-CV-1284-S, 2019 WL 2568681 (N.D. Tex. June 21, 2019)............... 25

711703v.1

*Porter v. Epps*,
    659 F.3d 440 (5th Cir. 2011) ................................................................... 19, 23, 24

*Rhyne v. Henderson Cty.*,
    973 F.2d 386 (5th Cir. 1992) ..................................................................... 22, 29

*Rios v. City of Del Rio, Tex.*,
    444 F.3d 417 (5th Cir.  2006) ........................................................................ 21

*Ruiz v. Brennan*,
    851 F.3d 464  (5th Cir. 2017) ......................................................................... 6

*Sanchez v. Young Cty, Tex.*,
    866 F.3d 274 (5th Cir. 2017) ................................................................... 9, 17, 23

*Scott v. Moore*,
    114 F.3d 51 (5th Cir. 1997) ..................................................................... 7, 8, 9, 38

*Scott v. White*,
    No. 1:16-CV-1287-RP, 2018 WL 2014093 (W.D. Tex. Apr. 30, 2018) ............................ 25

*Self v. City of Mansfield, Tex.*,
    369 F. Supp. 3d 684 (N.D. Tex. 2019) .............................................................. 11

*Shemwell v. Cannon*,
    352 F. Supp. 3d 690 (N.D. Tex. 2019) .............................................................. 32

*Shepard v. Hansford Cty.*,
    110 F. Supp. 3d 696 (N.D. Tex. 2015) .............................................................. 13

*Shepherd v. Dallas Cty.*,
    591 F.3d 445 (5th Cir. 2009) ................................................................. passim

*Sinegal v. City of El Paso*,
    414 F. Supp. 3d 995 (W.D. Tex. 2019).............................................................. 35

*Smith v. Brenoettsy*,
    158 F.3d 908 (5th Cir. 1998) ....................................................................... 22

*Smith v. Harris Cty.,Tex.*,
    956 F.3d 311 (5th Cir. 2020) ............................................................... 18, 41, 42

*Southard v. Tex. Bd. Criminal Justice*,
    114 F.3d 539 (5th Cir. 1997) ..................................................................... 4, 22

711703v.1

*Spiller v. City of Tex. City*,
   130 F.3d 162 (5th Cir. 1997) ............................................................. 20, 28

*Sullivan v. Leor Energy, LLC*,
   600 F.3d 542 (5th Cir. 2010) ....................................................................... 5

*Taylor v. Barkes*,
   135 S. Ct. 2042 (2015) ............................................................................ 17, 36

*Thompson v. Upshur Cty.*,
   245 F.3d 447 (5th Cir. 2001) ....................................................... 9, 15, 16, 17

*Torres v. Livingston*,
   No. 6:17-CV-196, 2018 WL 4655786 (E.D. Tex. July 23, 2018) ...................... 25

*Valle v. City of Houston*,
   613 F.3d 536 (5th Cir. 2010) ...................................................................... 23

*Webster v. City of Houston*,
   735 F.2d 838 (5th Cir. 1984) ................................................................. 28, 29

*Windham v. Harris Cty., Tex.*,
   875 F.3d 229 (5th Cir. 2017) ...................................................................... 41

*Ybarra-Fuentes v. City of Rosenberg*,
   No. CV H-18-1824, 2018 WL 6019177 (S.D. Tex. Nov. 16, 2018) ................... 25

*Young v. McCain*,
   760 Fed. App'x 251 (5th Cir. 2019) ............................................................ 17

**Statutes**

42 U.S.C. § 1983 ......................................................................................... 4, 5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 5, 6

711703v.1

**Regulations**

25 Tex. Admin. Code § 412.303(48) ........................................................................... 35

26 Tex. Admin. Code § 301.33(48) ............................................................................. 35

37 Tex. Admin. Code § 261.143 .................................................................................. 38

37 Tex. Admin. Code § 261.238 .................................................................................. 38

37 Tex. Admin. Code § 261.336 .................................................................................. 38

37 Tex. Admin. Code § 273.2 ...................................................................................... 35

37 Tex. Admin. Code § 275.1 ...................................................................................... 38

37 Tex. Admin. Code § 277.8 ...................................................................................... 31

**Other Authority**

Vol. 40 Tex. Reg. 9305 Dec. 18, 2015 ........................................................................ 35

Vol. 42 Tex. Reg. 6631 Nov. 24, 2017 ....................................................................... 35

Vol. 44 Tex. Reg. 7409 Nov. 29, 2019 ....................................................................... 35

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| CINDA LEE LOVATO, individually, on | § | |
| Behalf of all wrongful death beneficiaries, | § | |
| And on behalf of the ESTATE OF | § | |
| DANIEL LUIS MARTINEZ, and | § | |
| MARK MARTINEZ, individually, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| AMY HITCHCOCK, TANNER VANOVER, | § | |
| JARED RICE, B. HOWARD, S. SHOOK, | § | CIVIL ACTION NO. 2:20-CV-00070-BR |
| BRIAN THOMAS, and LISA DAWSON, | § | |
| in their individual capacities, and | § | |
| POTTER COUNTY, TEXAS, | § | |
| *Defendants.* | § | |

## POTTER COUNTY DEFENDANTS'
## CONSOLIDATED MOTION TO DISMISS

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE, LEE ANN RENO:

COME NOW Defendants Potter County, Amy Hitchcock, Tanner Vanover, Jared Rice,

Brett Howard, Sara Shook, Sheriff Brian Thomas and Lisa Dawson (hereinafter "Potter County

Defendants") and file their Consolidated Motion to Dismiss,[1]  and in support thereof would show

the Court as follows:

### I.
### SUMMARY

The Potter County Defendants file this Consolidated Motion to Dismiss seeking the

dismissal of the claims asserted in Plaintiffs' First Amended Complaint (Doc. 36) filed on

December 17, 2020.  Defendants Amy Hitchcock, Tanner Vanover, Jared Rice, Brett Howard,

---

[1] Pursuant to the Order Granting Agreed Motion and Brief for Leave to File Consolidated Motions to Dismiss, Response, and Reply Briefs and Motion to Modify Deadline to File Motion to Dismiss, Doc. 38, the Potter County Defendants file this Consolidated Motion to Dismiss.

Sara Shook, and supervisory Defendants Sheriff Brian Thomas and former Jail Captain Lisa Dawson affirmatively assert their defense of qualified immunity in this motion and argue that even if the Court finds that the claims alleged within the First Amended Complaint are sufficient to state claims against them, the claims as pleaded are insufficient to overcome the defense of qualified immunity asserted herein.[2]  Potter County seeks the dismissal of the claims against it because as pleaded the claims are insufficient to state actionable claims against it and instead reflect allegations of negligence against individual County employees.  Potter County also seeks the dismissal of the Americans with Disabilities Act/Rehabilitation Act claim against it due to the failure of the Plaintiffs to identify how agents of Potter County knew the Plaintiffs' son was disabled, or had actual notice that accommodations or further accommodations were needed, such that these employees could have intentionally discriminated against him.

## II.
### BACKGROUND

The Plaintiffs' son, Daniel Luis Martinez, died as a result of suicide while he was a pre-trial detainee in the Potter County Detention Center.  The Plaintiffs brought this litigation against several individual jailers, supervisors at Potter County, and Potter County alleging numerous causes of action related to the death of their son.

The Plaintiffs allege the following background facts in the First Amended Complaint:

- Daniel Luis Martinez ("Mr. Martinez") was booked into the Potter County Detention Center on April 23, 2018.  *See* Doc. 36, Pls.' Am. Compl. at ¶ 41.

- Mr. Martinez was placed into a general population cell.  *Id.* at ¶ 43.

---

[2] *See* Doc. 32, Order Denying Defendants Hitchcock, Vanover, Rice, Howard, and Shook's Motion to Dismiss, Granting Thomas and Dawson's Motion to Dismiss, And Granting In Part and Denying in Part Defendant Potter County's Motion to Dismiss at n.1.

- A week passed and on May 1, 2018 Defendant Sara Shook, the mental health officer at the Potter County jail, assessed Mr. Martinez's risk of suicide.  *Id*. at ¶¶ 50, 52.

- Defendant Brett Howard, a jailer at the Potter County jail, was present with Mental Health Officer Shook when she evaluated Mr. Martinez.  *Id*. at ¶ 53.

- Following this evaluation Officers Shook and Howard moved Mr. Martinez into a solitary confinement cell.  *Id*. at ¶ 60.

- Officer Howard wrote an incident report which was input into the jail's computer system and it was read aloud or paraphrased during shift change.  *Id*. at ¶¶ 80, 86.

- Potter County prohibited Defendant Jared Rice, the control room operator, from using the video system to observe Mr. Martinez and instead relied on in-person visual observation of detainees like Mr. Martinez by officers Hitchcock and Vanover.  *Id*. at ¶¶ 90-94.

- During the next shift while under the observation of officers Hitchcock and Vanover, Mr. Martinez committed suicide by hanging.  *Id*. at ¶ 108.

The Plaintiffs' First Amended Complaint sets forth six causes of action:  1) Fourteenth Amendment Denial of Medical Attention (against Hitchcock, Vanover, Rice, Howard, and Shook Only); 2) Fourteenth Amendment Conditions of Confinement (Dawson and Thomas only); 3) Fourteenth Amendment Pattern, Practice, Custom, and Failure to Train Claim (against Potter County Only); 4) Fourteenth Amendment Conditions of Confinement Claim (against Potter County Only); 5) Fourteenth Amendment Denial of Medical Attention and Failure to Supervise (against Thomas and Dawson Only); and 6) Americans with Disabilities Act and Rehabilitation Act (against Potter County Only).

The Plaintiffs allege that Defendants Amy Hitchcock, Tanner Vanover, Jared Rice, Brett Howard, and Sara Shook failed to take proper care of Daniel Luis Martinez, deceased, when he was in the Potter County Detention Center. Specifically, the Plaintiffs allege claims for denial of medical attention against the individual defendants. *See* Pls.' Am. Compl. at ¶¶ 136-143. The Plaintiffs seek to hold these individuals liable pursuant to 42 U.S.C. § 1983, alleging that they were deliberately indifferent to the medical needs of Daniel Luis Martinez, deceased. In addition to arguing that the claims asserted within the First Amended Complaint are conclusory and insufficient to state a claim, the individuals assert the defense of qualified immunity in this Motion to Dismiss.[3] For the reasons set forth below, the claims against the individual defendants should be dismissed.

The Plaintiffs allege that Sheriff Brian Thomas and Lisa Dawson have supervisor liability despite having no personal involvement in Mr. Martinez's suicide at the Potter County Detention Center. The Plaintiffs allege Thomas and Dawson failed to adequately train jailers, failed to adequately supervise jailers, adequately create policy, and allege they played a role in creating unconstitutional conditions of confinement. However, as explained below, the claims against Defendants Thomas and Dawson must be dismissed because: (1) the Plaintiffs seek to impose *respondeat superior* liability for the actions of subordinates, something which is not recognized in the Fifth Circuit under the facts alleged; and (2) the factual allegations underlying the failure to train, failure to supervise, and unconstitutional policy claims fail to meet the high standard necessary to properly state claims of deliberate indifference against supervisors Thomas and Dawson such that the allegations can overcome their defense of qualified immunity. *Southard v.*

---

[3] *See Blakely v. Andrade*, 360 F. Supp. 3d 453, 477-78 (N.D. Tex. 2019) (court considered qualified immunity at motion to dismiss state where initial motion raised defense, plaintiff filed amended complaint addressing defense, and subsequent motion aimed at amended complaint reasserted defense).

*Tex. Bd. Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997).  For the reasons set forth below, claims against supervisors Thomas and Dawson must be dismissed.

As to claims against Potter County, the Plaintiffs allege that it violated 42 U.S.C. § 1983 due to improper practices, policies, and customs, and that it failed to train employees, created unconstitutional conditions of confinement, and violated Title II of the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA").  For many of the same reasons that the claims against the individuals and supervisors must be dismissed so must the claims against Potter County.  The Amended Complaint contains insufficient factual support to allege a similar pattern of constitutional violations involving a similar harm.   Moreover, there are no allegations demonstrating that agents of Potter intentionally discriminated against Mr. Martinez or that agents of Potter County had actual knowledge accommodations or additional accommodations were needed by Mr. Martinez.  For the reasons set forth below, the claims asserted against Potter County must be dismissed.

### III.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a suit where a plaintiff has failed to state a claim upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6).  A motion to dismiss for failure to state a claim admits the facts alleged in the complaint but challenges the plaintiff's right to any relief based on those facts.  *See Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).  In reviewing a motion to dismiss, a court must consider the plaintiff's complaint, accepting all well-pleaded facts as true and viewing those facts in a light most favorable to the plaintiff.  *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).  In deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and

the documents either attached to or incorporated in the complaint.  *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1505 (2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim for relief is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing and quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *See Gonzalez*, 577 F.3d at 603 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although detailed factual allegations are not required to avoid dismissal under Rule 12(b)(6), a plaintiff must provide more than "bare assertions" and "conclusory" allegations that are nothing more than a "formulaic recitation of the elements of a cause of action."  *See Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55).  While well-pleaded facts of a complaint are to be accepted as true, a plaintiff's conclusory allegations and legal conclusions are not entitled to the assumption of truth.  *See Iqbal*, 556 U.S. at 678-79 (citation omitted); *Encompass Office Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2013 WL 1194392, *4 (N.D. Tex. Mar. 25, 2013) (citing *Iqbal*, 556 U.S. at 681). "However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Ruiz v. Brennan*, 851 F.3d 464 n.5 (5th Cir. 2017) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003)).

Dismissal is warranted "if the complaint lacks an allegation regarding a required element necessary to obtain relief."  *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

Furthermore, a dismissal under Rule 12(b)(6) is proper when "an affirmative defense or other bar to relief appears on the face of the complaint." *See Garrett v. Commonwealth Mortg. Corp. of America*, 938 F.2d 591, 594 (5th Cir. 1991).

## IV.
### TO THE EXTENT THE PLAINTIFFS ASSERT CONDITIONS-OF-CONFINEMENT CLAIMS AGAINST HITCHCOCK, VANOVER, RICE, HOWARD, AND SHOOK THESE CLAIMS SHOULD BE DISMISSED

It is unclear from the First Amended Complaint if these claims against the individual defendants are being brought as conditions-of-confinement claims or episodic-act-or-omissions claims. It is would appear from the allegations in paragraphs 136-143 of Plaintiffs' First Amended Complaint that the claims are being brought as episodic-act-or-omissions claims. To the extent they are being brought as conditions-of-confinement claims the individual defendants seek to have them dismissed for the reasons asserted below.

## A.        Conditions-of-Confinement Claims Versus Episodic-Act-or-Omissions Claims

A conditions-of-confinement claim is an attack on general conditions, practices, rules or restrictions of pretrial confinement. *Hare v. City of Corinth*, 74 F.3d 633, 644–45 (5th Cir. 1996). Courts apply the test established by the Supreme Court in *Bell v. Wolfish*, and ask if the condition of confinement is reasonably related to a legitimate governmental objective. *See Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 463 (5th Cir. 2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).

To prevail on a conditions-of-confinement claim based upon inadequate medical care, a plaintiff must show that the level of medical care provided to the detainee was not reasonably related to a legitimate governmental objective and therefore constituted punishment in violation of the Fourteenth Amendment. *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009). In conditions-of-confinement cases it is the conditions themselves that constitute the harm. *Scott v.*

*Moore*, 114 F.3d 51, 53 (5th Cir. 1997). These are conditions such as "inadequate food, heating, or sanitary conditions themselves [that] constitute miserable conditions."

These cases are very different from acts-or-omissions cases where "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id*. Conditions of confinement can be proven through a pattern of acts or omissions pervasive enough to provide an intended condition or practice. *Shepherd*, 591 F.3d at 452. Proving a pattern is a heavy burden. *Id*.

The focus of the Plaintiffs' Amended Complaint is on the actions of the individual Defendants at the Potter County Detention Center in relationship to the decedent. The actions, or alleged inaction and/or alleged inappropriate actions, comprise the root of the Plaintiffs' complaints against the individual Defendants identified in cause of action (A) of the Plaintiffs' Amended Complaint. Because specific actions the individuals either took or omitted taking are criticized by the Plaintiffs the claims are properly characterized as episodic-act-or-omission claims. *Scott v. Moore*, 114 F.3d at 53 (holding in sexual assault of a detainee case that the action is characterized as an episodic-act-or-omission case where harm complained of is an act or omission of one or more officials); *Flores v. Cty. of Hardeman, Tex.* 124 F.3d 736, 737 (5th Cir. 1997) (holding that a case involving complaints about particular acts of deputies in an inmate suicide case constitute an episodic-act-or-omission case).

"Because the focus of the claim is one individual's misconduct, the detainee is required to prove intent—specifically, that one or more jail officials 'acted or failed to act with deliberate indifference to the detainee's needs.'" *Shepherd*, 591 F.3d at 452. Deliberate indifference in the

context of an episodic failure to provide reasonable medical care to a pretrial detainee means that the public officials were aware of facts from which an inference of a substantial risk of serious harm to an individual could be drawn, and that they actually drew the inference.  *Thompson v. Upshur Cty.,* 245 F.3d 447, 458–59 (5th Cir. 2001); *Sanchez v. Young Cty, Tex.*, 866 F.3d 274, 280 (5th Cir. 2017); *Garza v. City of Donna*, 922 F.3d 626, 634-35 (5th Cir. 2019).  The Fifth Circuit has described the standard as one in which "the official knows of and disregards an excessive risk to inmate safety."  *Garza*, 922 F.3d at 636.

**B.      Hitchcock, Vanover, Rice, Howard, and Shook Seek the Dismissal of Any Conditions-of-Confinement Claims Brought Against Them**

To the extent that the Plaintiffs bring conditions-of-confinement claims against Hitchcock, Vanover, Rice, Howard, and Shook these defendants seek dismissal of these claims.  These individuals, based upon the Plaintiffs' own pleadings in paragraphs ¶¶ 136-143, were not engaged in the official policy making of Potter County, but instead were individual jail officials.  The Plaintiffs have not pleaded that these individual defendants were responsible for the conditions themselves in the Potter County jail that constituted the alleged harm. In paragraph 141 of the Amended Complaint the Plaintiffs state that each of the individual defendants knew about risks "in light of the jail's policies, customs, practices, and training, and each disregarded the risk." Pls.' Am. Compl. at ¶ 141.  This indicates that the claims against the individual defendants are based on their actions or inactions; therefore, they are act-or-omission claims.  *Scott*, 114 F.3d at 53; *Shepherd*, 591 F.3d at 452 (explaining that a condition is usually the manifestation of an explicit policy or restriction such as the number of bunks per cell, mail privileges, or disciplinary segregation).

**V.**

**THE PLAINTIFFS HAVE NOT PLEADED FACTS WHICH OVERCOME THE DEFENSE OF QUALIFIED IMMUNITY ASSERTED BY HITCHCOCK, VANOVER, RICE, HOWARD, AND SHOOK TO THEIR FOURTEENTH AMENDMENT DENIAL OF MEDICAL ATTENTION CLAIMS**

The Plaintiffs assert a claim for Fourteenth Amendment Denial of Medical Attention against the individual defendants Amy Hitchcock, Tanner Vanover, Jared Rice, Brett Howard and Sara Shook. *See* Doc. 36, Pls.' Am. Compl. at ¶¶ 136-143; Cause of Action (A). By their pleadings the Plaintiffs have not pleaded facts sufficient to state this claim against all the individual defendants, nor have they adequately pleaded allegations which overcome the defense of qualified immunity asserted by these individual defendants.

To state a claim for denial of medical attention against the individual defendants the Plaintiffs must show that the official acted with deliberate indifference to a detainee's serious medical needs. *Estate of Bonilla v. Orange Cty., Tex.*, 982 F.3d 298, 305 (5th Cir. 2020). Plaintiffs must show "officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To prove deliberate indifference, the Plaintiffs must show that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that the defendant "actually drew the inference," and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). As the court recognized in ruling on the prior Motion to Dismiss, "[m]ere negligence is insufficient." Order, Doc. 32 at p. 8 (citing *Hare*, 74 F.3d at 649-50). In characterizing the recent jurisprudence in the area of deliberate indifference to inmate suicide the Fifth Circuit stated, "[t]he common threat is a reluctance to hold that

generalized evidence of an inmate's mental illness invariable indicates a substantial risk of self-harm." *Estate of Bonilla*, 982 F.3d at 306.

To overcome a motion to dismiss based on qualified immunity, the Plaintiffs must first demonstrate that they have alleged sufficient facts to show that the individual defendants' conduct violated a clearly established constitutional right. *Self v. City of Mansfield, Tex.*, 369 F. Supp. 3d 684, 696–97 (N.D. Tex. 2019). Then, they must show that the constitutional right was clearly established at the time of the defendants' alleged misconduct. *Id.* Government officials are entitled to qualified immunity "if their decision was reasonable, albeit mistaken." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Through this Motion to Dismiss the individual defendants assert that the pleadings of the Plaintiffs in the First Amended Complaint do not state sufficiently state claims against them for denial of medical attention and, for purposes of argument, to the extent that those claims are properly stated these individual defendants assert that they are not stated sufficiently to overcome the defense of qualified immunity they assert herein.

A.   **The Denial of Medical Attention Claim Asserted Against Jared Rice Should Be Dismissed**

Jared Rice seeks the dismissal of the denial of medical attention claim against him because as pleaded the allegations do not allege he had a duty to observe Mr. Martinez in his cell. Therefore, the allegations are insufficient to state an episodic-act-or-omission claim for deliberate indifference. Finally, the allegations in the Amended Complaint do not overcome his qualified immunity defense.

In the Plaintiffs' Amended Complaint the Plaintiffs allege that Jared Rice was read a report from Brett Howard informing him that Mr. Martinez was a suicide risk but that Mr. Rice did

nothing to prevent the death Mr. Martinez. *See* Pls.' Am. Compl. at ¶ 86. While Defendant Jared Rice denies that he had any knowledge of risk of suicide to Mr. Martinez, the Plaintiffs then plead that "while Martinez's cell could be observed constantly by video surveillance by the officer in the control room, Defendant Rice did not actually continuously observe the video." *See* Pls.' Am. Compl. at ¶ 89. This, the Plaintiffs allege, is because, "Potter County's policies, practices, and customs prohibited Rice from using the video camera system to observe Martinez. Though Rice could have easily used the camera system to monitor events in Martinez's cell, he did not because the County's policy, practice, and custom prohibited him from doing so." *See* Pls.' Am. Compl. at ¶ 90. The Plaintiffs allege additional facts demonstrating that Rice <u>could not</u> have monitored Mr. Martinez's cell in paragraphs 91, 93, 94 148(i), 154(j), 164, 176 and had no duty to monitor Mr. Martinez's cell because Potter County relied "on in-person visual observations of detainees like Martinez by officers like Hitchcock and Vanover." *See* Pls.' Am. Compl. at ¶ 94.

By the Plaintiffs' own pleadings Rice was prohibited from using the video cameras to observe or monitor inmates like Martinez—the very action the Plaintiffs allege Rice should have taken. Under the Fifth Circuit's deliberate indifference standard to be liable for denial of medical attention Rice would have had to have been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, he actually drew the inference, <u>and deliberately disregarded the risk</u>. *Converse v. City of Kemah, Tex.*, 961 F.3d 771, 775 (5th Cir. 2020)(emphasis added). *Even assuming* Rice perceived a risk, a point Rice disputes, he would have had to violate the policies of the Potter County jail regarding the monitoring of inmates in order to have undertaken the action the Plaintiffs allege he should have taken. By doing his job properly he could not have deliberately disregarded a risk to Mr. Martinez. An official shows a

deliberate indifference to that risk "by failing to take <u>reasonable measures to abate it</u>." *Id.*, at 776. (citing *Hare v. City of Corinth*, 74 F.3d at 648).

Pleading that Jared Rice should have violated his employer's policies regarding the supervision of inmates requires Rice to have taken an *un*reasonable measure.  By the Plaintiffs own pleadings Jared Rice had no duty to monitor Mr. Martinez's cell.  Without alleging that Rice had a duty to monitor Mr. Martinez the Plaintiffs cannot properly state a claim against Rice for deliberate indifference.  Even in a case where one jailer was required to perform multiple duties, Judge Mary Lou Robinson held that, "no Fifth Circuit case law clearly stated that, in an understaffing situation similar to the one faced by Vera, a jailer must abandon some of her other duties in order to ensure that all the suicide checks were properly carried out."  *Shepard v. Hansford Cty.*, 110 F. Supp. 3d 696, 713 (N.D. Tex. 2015).[4]  The Plaintiffs' allegations that Rice should have abandoned his own job duties in order to violate jail policy and monitor Mr. Martinez, the job of Defendants Vanover and Hitchcock, is inconsistent with what case law requires of public officials and is insufficient to both state a claim for deliberate indifference and to overcome qualified immunity at the 12(b)(6) stage.

At the 12(b)(6) stage, when the defense of qualified immunity is raised, "it is the defendant's conduct as alleged in the compliant that is scrutinized for 'objective legal reasonableness.'"  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  By the Plaintiffs' own pleadings Rice had no duty to observe Mr. Martinez in his cell; therefore, it is unreasonable to expect him to perceive a risk from following policy and properly performing his

---

[4] While Judge Robinson's decision in *Shepard v. Hansford County* concerned factual allegations that occurred in 2012, the Fifth Circuit recently demonstrated the continued applicability of her ruling by stating that "no decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols."  *Estate of Bonilla*, 982 F.3d 298, 307 (5th Cir. 2020).

job duties.  *Estate of Pollard v. Hood Cty., Tex.*, 579 Fed. App'x 260, 266 (5th Cir. 2014) (finding that when no evidence was presented that individual jailers had an affirmative duty to act the argument that that they were deliberately indifferent by failing to act was abandoned).  In *Jacobs v. West Feliciana* Sheriff's Department, the Fifth Circuit held that no reasonable jury could find that a deputy that who was "essentially following orders," acted with deliberate indifference when that deputy was not involved with the decision regarding the detainee's housing and also had no involvement with the decision to give the detainee a blanket and towel.  *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 398 (5th Cir. 2000); *Estate of Munoz by Ruelas v. Ford*, 402 F. Supp. 3d 344, 354 (E.D. Tex. 2019) (finding defendants were entitled to qualified immunity when allegations against them failed to show they were aware of or responsible for the suicidal detainee during the relevant period); *see also Floyd v. City of Kenner*, 351 F. App'x 890, 898–99 (5th Cir. 2009) (official was entitled to qualified immunity where allegations were "bare" and lacked "any detail about what [the official] ... did to [deprive plaintiff of his constitutional rights]").

Based on the Plaintiffs' own pleadings Jared Rice was following the policy of Potter County in the operation of the control room on the night of Mr. Martinez's suicide and had no duty to monitor Mr. Martinez in his cell.  For the reasons stated above Jared Rice should be dismissed from this case.

## B.    The Denial of Medical Attention Claims Asserted Against Brett Howard Should Be Dismissed

Brett Howard seeks the dismissal of the denial of medical attention claim against him because as pleaded the allegations are insufficient to state an episodic-act-or-omission claim against him for deliberate indifference, and the allegations of the Plaintiffs' First Amended Complaint do not overcome his qualified immunity defense.  A prison official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show

deliberate indifference." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d at 756 (quoting *Farmer v. Brennan*, 511 U.S. at 838 (alterations and internal quotation marks omitted).

Against Brett Howard, the Plaintiffs have pleaded that he was present with Mental Health Officer Sara Shook on May 1, 2018 when she conducted a mental health assessment of Martinez. *See* Pls.' Am. Compl. at ¶ 53.  Following the mental health assessment conducted by Mental Health Officer Shook, the Plaintiffs allege that Howard and Shook moved Mr. Martinez into a solitary-confinement cell, that Howard told Mental Health Officer Shook that he believed Mr. Martinez needed assistance, and that Howard wrote an incident report which was input into the jail's computer system and that report should have been read to officers during shift change.  *See* Pls.' Am. Compl. at ¶¶ 64, 73, 80.  Assuming *for purpose of argument* that the pleadings of the Plaintiffs demonstrate that Howard had knowledge of a risk to Mr. Martinez the Plaintiffs' pleadings also point to three things that Howard did in order to abate the risk of serious harm to Mr. Martinez:  1) he assisted Mental Health Officer Shook by moving Mr. Martinez to a different cell after her assessment of Mr. Martinez (*see* Pls.' Am. Compl. at ¶ 60); 2) he told Mental Health Officer Shook he believed Mr. Martinez needed assistance (*see* Pls.' Am. Compl. at ¶ 73); and 3) he wrote an incident report concerning Mr. Martinez which would be read to the next officers at shift change (*See* Pls.'s Am. Compl. at ¶ 80).

Even if in hindsight these actions were not the perfect response, as alleged these actions do not rise to the high standard of deliberate indifference necessary to overcome Howard's qualified immunity defense.  In *Farmer v. Brennan*, the Supreme Court stated that deliberate indifference requires the defendant to have a subjective "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835.  It cannot be said that as pleaded Howard's actions were objectively unreasonable as is necessary to overcome his defense of qualified immunity. *Thompson v. Upshur*

*Cty, Tex.,* 245 F.3d at 457 (noting that the Defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the constitution or law).  As recognized in *Hyatt*, "even if an officer responds without the due care a reasonable person would use—such that the officer is only negligent—there will be no liability." *Hyatt,* 843 F.3d at 178.  The three actions that the Plaintiffs have alleged Officer Howard took are the due care a reasonable jailer would use in the same or similar situation.

Moreover, the Plaintiffs have not pleaded that Officer Howard, as the non-mental health officer, had reason to believe, much less actual knowledge, that Mr. Martinez needed additional accommodations other than those provided by Mental Health Officer Shook.  *Miranda v. Cty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018) ("When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention.")).  In *Baughman v. Hickman*, a deputy observed the plaintiff in pain and yet deferred to the decisions of multiple medical personnel and the Fifth Circuit held that such an allegation failed to state claim against the deputy.  *Baughman v. Hickman*, 935 F.3d 302, 310 (5th Cir. 2019).  It is reasonable that Howard deferred to the expertise of Mental Health Officer Sara Shook, and for this reason the allegations do not state a claim that overcomes his defense of qualified immunity.  His "assessment may have proven incorrect, but [his] response was not indifferent." *Estate of Bonilla v. Orange Cty., Tex.*, 982 F.3d at 305; *see also Baldwin v. Dorsey*, 964 F.3d 320 (5th Cir. 2020)(finding no reasonable jury could determine an officer was deliberately indifferent to protecting an inmate from suicide when the officer handcuffed the detainee to a bench but delayed three hours in telling a nurse about the suicide risk).

**C.      The Denial of Medical Attention Claim Against Sara Shook Should Be Dismissed**

Sara Shook seeks the dismissal of the denial of medical attention claim against her because as pleaded the allegations are insufficient to state an episodic-act-or-omission claim against her for deliberate indifference.   Moreover, Sara Shook argues that even if the allegations of the Amended Complaint do properly state a claim such allegations are not sufficient to overcome her qualified immunity defense.   Sara Shook was the Mental Health Officer at the Potter County Jail at the time Mr. Martinez committed suicide.   *See* Pls.' Am. Compl. at ¶ 45.   On May 1, 2018 she conducted a mental health assessment of Mr. Martinez, while in the presence of Officer Howard. *Id.* at ¶ 53.   Following the assessment of Mr. Martinez, Shook placed him in a solitary confinement cell.   *Id.* at ¶ 66.

Even if the actions of Mental Health Officer Shook following her assessment of Mr. Martinez were negligent "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459; *see also Sanchez v. Young Cty., Tex.*, 866 F.3d 274, 280 (5th Cir. 2017) (finding that the actions of officers and jail personnel with regard to a suicidal detainee may have "amounted to negligence, or gross negligence" but not deliberate indifference).   Because "[s]uicide is inherently difficult to predict, particularly in the depressing prison setting ... an incorrect diagnosis regarding the genuineness of a suicide threat does not amount to deliberate indifference." *Young v. McCain*, 760 Fed. App'x 251, 257 (5th Cir. 2019).   There is no right to the proper implementation of adequate suicide prevention protocols. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Hyatt*, 843 F.3d at 179-80.   Therefore, while the Plaintiffs allege Shook took incorrect actions, these allegations of negligence do not rise to the level of deliberate indifference necessary to overcome her defense of qualified immunity.

Similar to the mental health officer in *Smith v. Harris County, Texas,* even if her assessment may have been wrong, that "would not convert a perhaps-negligent mistake into intentional discrimination or deliberate indifference." *Smith v. Harris Cty., Tex.*, 956 F.3d 311, 320 (5th Cir. 2020). A disagreement with recommended treatment or failure to provide optimal care is generally insufficient to show deliberate indifference. *Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018); *Petzold v. Rostollan*, 946 F.3d 242, 250–51(5th Cir. 2019).

**D.    The Denial of Medical Attention Claims Asserted Against Amy Hitchcock and Tanner Vanover Should Be Dismissed**

Amy Hitchcock and Tanner Vanover seek the dismissal of the denial of medical attention claim against them because as pleaded the allegations are insufficient to state an episodic-act-or-omission claim against them which overcomes their defense of qualified immunity.

Plaintiffs' Amended Complaint alleges that Hitchcock and Vanover were read the report written by Brett Howard and that they failed to observe Mr. Martinez's cell frequently enough to guard against a suicide death. *See* Pls.' Am. Compl. ¶ 86, 140. While these allegations may state a claim for negligence or gross negligence against Hitchcock and Vanover they are insufficient to state a claim for deliberate indifference. "While the staff at the Jail collectively may have acted negligently, or even grossly negligently, by ignoring Jail procedures, no single individual deliberately ignored an excessive risk of harm." *Anderson v. Dallas Cty. Tex.*, 286 Fed. App'x 850, 862 (5th Cir. 2008). Under Fifth Circuit precedent a jail employee's failure to abide by a policy requiring fifteen-minute close-watch checks has been found to demonstrate "at best, negligence." *Garcia v. City of Lubbock*, No. 5:20-CV-053-H, Doc. 59 at pp. 13-14 (N.D. Tex. June 26, 2020)(unpublished)(Hendrix, J.)(dismissing claims against jailers alleging a failure to comply with fifteen-minute close-watch checks and citing to *Jacobs*, 228 F.3d at 398); *see also Green v. Harris Cty., Tex.*, No. CV H-16-893, 2019 WL 2617429, at *15 (S.D. Tex. June 26, 2019)

(holding that a jailer's failure to conduct twice hourly observations reflects negligence, not deliberate indifference); *Estate of Munoz by Ruelas,* 402 F. Supp. 3d at 354 (holding that claims defendants did not physically check on the well-being of the inmate and failed to place him in a mental health high risk status did not rise to the extremely high standard of deliberate indifference). "[A] prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right." *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017). Hitchcock and Vanover move for a dismissal of the claims asserted against them for deliberate indifference to medical attention because as stated the allegations are insufficient to state a claim and/or are insufficient to state a claim that overcomes their defense of qualified immunity.

## VI.
### THE FOURTEENTH AMENDMENT CONDITIONS-OF-CONFINEMENT CLAIM MADE AGAINST SUPERVISORS DAWSON AND THOMAS SHOULD BE DISMISSED

Former Jail Captain Lisa Dawson and Sheriff Brian Thomas seek the dismissal of the Fourteenth Amendment conditions-of-confinement claim brought against them by the Plaintiffs because the allegations within the Amended Complaint fail to properly state this claim against them in such a way that overcomes their defense of qualified immunity. *See* Pls.' Am. Compl. at ¶¶ 144-151; Cause of Action (B).

The Plaintiffs' Amended Complaint does not allege that either Dawson or Thomas were personally involved in the incident concerning Mr. Martinez. A supervisory official may be liable under § 1983 if he "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). The Plaintiffs have not alleged that Dawson or Thomas were personally involved in the acts they allege caused the constitutional deprivation. To

the extent those claims are asserted they must be dismissed because there are no supporting factual allegations.

Instead, the allegations contained in the Plaintiffs' Amended Complaint are that Defendants Thomas and Dawson implemented unconstitutional policies that created unconstitutional conditions of confinement. *See* Pls.' Am. Compl. at ¶¶ 144-51; Cause of Action (B).

To prevail on a conditions-of-confinement claim, the Fifth Circuit has held that a plaintiff must show (1) "a rule or restriction or ... the existence of an identifiable intended condition or practice ... [or] that the jail official's acts or omissions were sufficiently extended or pervasive"; (2) which was not reasonably related to a legitimate governmental objective; and (3) it caused the violation of the pretrial detainee's constitutional rights. *See* Order, Doc. 32 at p. 14, quoting *Duvall v. Dallas Cty., Tex.*, 631 F.3d 203, 207 (5th Cir. 2011). Here the Plaintiffs have not identified a specific explicit policy implemented at Potter County, but instead allege the existence of de facto policies in paragraphs 146-148 of the Amended Complaint.

In order to sufficiently state a conditions-of-confinement claim against Thomas and Dawson based upon a de facto policy the Plaintiffs must meet the "heavy burden," of establishing a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to provide an intended condition or practice." *Shepherd*, 591 F.3d at 454. The allegations of the Plaintiffs regarding this claim are conclusory and fall short of requisite standard of proof required. *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on

these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

The Amended Complaint contains numerous conclusory allegations that Thomas and Dawson knew the alleged conditions created problematic conditions that would create risks to inmates. *See* Pls.' Am. Compl. at ¶¶ 146-151. Despite the incriminating language, these allegations are not paired with the necessary specific facts and similar incidents to show that Thomas and Dawson's alleged failures were sufficiently extended or pervasive to constitute an intended condition or practice. The allegations concerning the general conditions in ¶ 146 of the Amendment Complaint of overcrowding, underfunding, and understaffing, as well as the allegations about policies, practices, and customs in ¶ 148 are not tied to the cause of Mr. Martinez's death in the Amended Complaint. *See* Pls.' Am. Compl. at ¶¶ 146, 148.

A single alleged incident is insufficient to infer that there is an official custom or policy. *Hester v. Dallas Cty. Jail*, No. 3:11-CV-3099-B-BH, 2012 WL 1430539, at *2 (N.D. Tex. Mar. 6, 2012), *report and recommendation adopted*, 3:11-CV-3099-B-BH. "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984). The Plaintiffs must establish a pattern of similar violations to demonstrate a supervisor's deliberate indifference, not merely a single incident. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 427 (5th Cir. 2006). Without proof—or at the Rule 12 stage, credible allegations—of a recurring pattern, a claim based upon a custom or policy must fail. *See Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001) ("A customary municipal policy cannot ordinarily be inferred from single constitutional violations.") A pattern also requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Such a pattern of conduct

requires both <u>similarity and specificity</u> which point to the specific violation in question as opposed to isolated instances.  *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 851 (5th Cir. 2009) (emphasis added).  In this case, the Plaintiffs have only referenced prior jail incidents from the years 1993, 1997, 1998, 2001, and 2008.  *See* Pls.' Am. Compl. at ¶¶ 125-129.  These occurred between 10-25 years prior to the incident at issue and involve different officials, supervisors, and factual situations from the incident at issue here.

Moreover, to hold a supervisor liable for the creation of a policy, plaintiffs must show the policy was adopted with deliberate indifference.  *Gates*, 537 F.3d at 435.  There are no factual allegations specifically pointing to a policy adopted by Defendants Thomas or Dawson which is both casually connected with the constitutional violations alleged and connected with allegations of deliberate indifference during the adoption and implementation of such policy.  *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992).  A showing of deliberate indifference for a supervisor means the supervisor disregarded a known or obvious consequence of his or her action.  *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d at 551.  This high standard would require that Defendants Thomas and Dawson each (1) have had knowledge an inmate faced a substantial risk of serious bodily harm, and that each (2) disregarded that risk by failing to take reasonable measures to abate it.  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998).  Proof of deliberate indifference on the part of a supervisor requires plaintiffs to show a pattern of violations that the policy is "obvious and obviously likely to result in a constitutional violation."  *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010).  As stated by this Court in the prior Order, "'Stated another way, to establish deliberate indifference, a plaintiff must show at least a pattern of violations (fairly similar to what ultimately transpired) so that the failure of the [supervisor] to respond with…better supervision…reflects a deliberate or

conscious choice to endanger constitutional rights.'" Order, Doc. 32, at p. 16 quoting *Ngoc-Chi Huyh v. City of Houston*, No. CIV. A. H-10-1303, 2011 WL 6250792, at *8 (S.D. Tex. Dec 12, 2011); *see also Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 751 (S.D. Tex. 2011); *Valle v. City of Houston,* 613 F.3d 536, 547 (5th Cir. 2010).

For these reasons Defendants Dawson and Thomas seek the dismissal of the conditions-of-confinement claim against them.

## VII.
### THE FOURTEENTH AMENDMENT DENIAL OF MEDICAL ATTENTION AND FAILURE TO SUPERVISE CLAIMS MADE AGAINST DAWSON AND THOMAS SHOULD BE DISMISSED

Former Jail Captain Lisa Dawson and Sheriff Brian Thomas seek the dismissal of the Fourteenth Amendment denial of medical attention and failure to supervise claims brought against them by the Plaintiffs on the grounds that the Amended Complaint fails to properly state these claims against them and as alleged these claims do not overcome their defense of qualified immunity. *See* Pls.' Am. Compl. at ¶¶ 182-188; Cause of Action (E).

Similar to the claims made in the Plaintiffs' Amended Complaint – Cause of Action B, the Plaintiffs allege in Cause of Action E that Thomas and Dawson failed to supervise the other individual defendants.[5]  *Id.*  "A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists

---

[5] In Cause of Action E – Fourteenth Amendment Denial of Medical Attention (Against Thomas and Dawson Only) the Plaintiffs do not allege personal involvement by Thomas or Dawson in the acts that lead to the death of Mr. Martinez.  As noted previously in this Motion, a supervisory official may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter*, 659 F.3d at 446.  In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates. *Gates*, 537 F.3d at 435.  To the extent that Plaintiffs assert claims against Thomas and Dawson for Denial of Medical Attention apart from those requiring an analysis of their supervisory duties, Thomas and Dawson seek a dismissal of such claims.  *Sanchez v. Young Cty., Tex.*, 866 F.3d 274, 281 (5th Cir. 2017) (holding that supervisors cannot be held liable for constitutional violations committed within the jail if they had no personal involvement).

between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Porter v. Epps*, 659 F.3d at 446.

The allegations of the Plaintiffs on this point in the Amended Complaint do not to adequately establish a pattern of similar violations.   Additionally, the allegations are too conclusory to adequately establish that Thomas or Dawson had knowledge of each subordinate officer's conduct such that they were deliberately indifferent to it.   The conclusory allegations are located at ¶¶ 182-188 in the Amended Complaint.   Each of the allegations that Thomas and Dawson failed to supervise the other Defendants, and that they knew that officers regularly placed detainees at risk of suicide in dangerous cells, failed to start suicide watches, failed to confiscate bedding and uniforms, and only used video surveillance to observe inmates house in solitary confinement cells are unsupported by factual details.   These allegations are also unsupported by proof of a pattern of similar incidents involving similar harm.   Instead, the Amended Complaint pleads the opposite and states that Thomas and Dawson disciplined officers for violations of inmate observation policies.   *See* Pls.' Am. Compl. at ¶¶ 96-100.

Also missing from these statements are allegations that actions by subordinates were constitutional violations, committed with deliberate indifference by subordinates, and that Defendants Thomas and Dawson also committed deliberate indifference by knowing about the actions of the subordinates and ignored these risks.   The necessary causal link cannot be established from the Plaintiffs' allegations.   To hold a supervisor liable pursuant to a failure-to-supervise claim the "focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Conway v. Vannoy*, No. CV18-33-JWD-EWD, 2019 WL 1317721, at *6 (M.D. La. Mar. 22, 2019) (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

As this Court previously recognized, failure to supervise claims must be supported by a pattern of similar violations such that the supervisors can be held to have been deliberately indifferent in their failure to supervise:

> These allegations are too conclusory to adequately plead a pattern of violations or that Thomas and Dawson knew of their subordinate officers' alleged improper conduct, such that Thomas and Dawson were deliberately indifferent to the same. *See Poloceno v. Dallas Indep. Sch. Dist.*, No. 3:18-CV-1284-S, 2019 WL 2568681, at *5–6 (N.D. Tex. June 21, 2019) (vague and unsupported allegations of a pattern and officials' knowledge of prior incidents were insufficient to state failure to train claim); *see also Ybarra-Fuentes v. City of Rosenberg*, No. CV H-18-1824, 2018 WL 6019177, at *8 (S.D. Tex. Nov. 16, 2018) (conclusory allegation that pretrial detainee suicide at issue was "only one of numerous instances where [jail] has failed to provide needed care" was insufficient to state failure to supervise claim against police chief); *see also Torres v. Livingston*, No. 6:17CV196, 2018 WL 4655786, at *8 (E.D. Tex. July 23, 2018) (conclusory assertions that pattern existed were insufficient to state failure to supervise claim); *see also Scott v. White*, No. 1:16-CV-1287-RP, 2018 WL 2014093, at *9 (W.D. Tex. Apr. 30, 2018) (three incidents of allegedly excessive force that occurred over the four years prior to incident at issue were insufficient to state failure to train or supervise claim); *see also Escobedo v. Rowe*, No. 5:17-CV-273-BQ, 2018 WL 2090748, at *3 (N.D. Tex. Apr. 5, 2018), *adopted by* No. 5:17-CV-273-C, 2018 WL 2089349 (N.D. Tex. May 4, 2018) (allegations that sheriff "allow[ed] illegal searches and false arrests" were unsupported conclusory allegations insufficient to state failure to supervise claim against sheriff);

*See* Order, Doc. 32, at p. 16-17. *See also Jackson v. Valdez*, 3:18-CV-2935-X-BH, 2020 WL 1428775, at *9 (N.D. Tex. Feb. 27, 2020), report and recommendation adopted, 2020 WL 1339923 (N.D. Tex. Mar. 23, 2020)(holding four incidents over five years insufficient to show a pattern of constitutional violations).

In this case the pleadings of the Plaintiffs do not demonstrate factual support for their claim that Defendants Thomas and Dawson had knowledge that any inmate faced a substantial risk of

serious bodily harm, and that each disregarded that risk by failing to take reasonable measures to abate it.  *Gobert*, 463 F.3d at 346.

This claim against Thomas and Dawson should be dismissed because the Plaintiffs' allegations concerning the failure to supervise claim against Thomas and Dawson are too conclusory to establish the necessary pattern of similar violations, and because the allegations do not support a finding of deliberate indifference sufficient to overcome the defense of qualified immunity asserted by Thomas and Dawson.

## VIII.
### THE FOURTEENTH AMENDMENT PATTERN, PRACTICE, AND CUSTOM CLAIM ASSERTED AGAINST POTTER COUNTY SHOULD BE DISMISSED

Defendant Potter County seeks the dismissal of the Fourteenth Amendment pattern, practice, and custom claim brought against it by the Plaintiffs on the grounds that the Amended Complaint fails to properly state these claims.  *See* Pls.' Am. Compl. at ¶¶ 152-171; Cause of Action (C).  Potter County seeks a dismissal of this claim because the Plaintiffs' allegations are insufficient to state a *Monell* claim against Potter County under such a theory.

An entity's liability under § 1983 requires proof of three elements: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom.  *See Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *see also Piotrowski v. City of Houston*, 237 F.3d at 578 (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978))(stating the three elements as: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom).

Under this standard the Plaintiffs fail to raise facts in their Amended Complaint which would impose municipal liability.  Considerably more proof is needed to "establish both the

requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 813 (1985); *City of Canton v. Harris*, 489 U.S. 378 (1989).

The Plaintiffs allege that the following are "policies, practices, or customs in place" by Potter County at the time of the incident:

◊ "Having no formal suicide watch policy or protocol, resulting in suicidal detainees (like Martinez) routinely being at known risk of suicide with no communication to officer's on later shifts that the detainee was at serious risk of injury or death;" *See* Pls.' Am. Compl. at ¶ 154(a).

◊ "Regularly confining inmates at high risk of suicide in dangerous conditions of confinement, such that the solitary confinement cell Martinez was housed in that had multiple "tie-off" points, could not be easily physically observed, and was designed to only house single detainees;" *See* Pls.' Am. Compl. at ¶ 154(b).

◊ "Overcrowding the jail, housing detainees who could be otherwise released on bond (or on personal recognizance) when officers are unable to adequately observe all detainees and resources are too "thin" to ensure all detainees receive appropriate medical attention;" *See* Pls.' Am. Compl. at ¶ 154(c).

◊ "Failing to continuously observe detainees at high risk of suicide;" *See* Pls.' Am. Compl. at ¶ 154(d).

◊ "Not confiscating bedding from detainees known to be suicidal;" *See* Pls.' Am. Compl. at ¶ 154(e).

◊ "Housing detainees at risk of suicide in single-person cells, including the solitary confinement cell Martinez was placed in;" *See* Pls.' Am. Compl. at ¶ 154(f).

◊ "Housing detainees at risk of suicide in cells with "tie-off" points, including the solitary confinement cell Martinez was placed in;" *See* Pls.' Am. Compl. at ¶ 154(g).

◊ "Routinely failing to observe suicidal detainees at intervals frequent enough to prevent suicide deaths and other serious medical emergencies;" *See* Pls.' Am. Compl. at ¶ 154(h).

◊ "Failing to obtain psychiatric services for actively suicidal detainees; and," *See* Pls.' Am. Compl. at ¶ 154(i).

◊ "Prohibiting the use of video surveillance as a supplement to in-person observation of detainees known to be suicidal." *See* Pls.' Am. Compl. at ¶ 154(j).

These allegations, even if true, do not constitute practices or policies of Potter County, but are instead allegations of negligence against individual Potter County Detention Center employees. These allegations do not support any plausible municipal liability claim. "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d at 167. Mere allegations of negligence cannot support a § 1983 claim. *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986).

The Plaintiffs also fail to allege any policy that was *officially adopted* or promulgated by Potter County through its final policymakers that is connected with the alleged deprivation of rights and fail to show a custom or widespread practice so pervasive that it has become the force of law for the County. *Pineda v. City of Houston*, 291 F.3d at 328 (emphasis added). In *Pineda v. City of Houston* the Fifth Circuit held that an official policy may be shown through:

> 1.    A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or
>
> 2.    A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*See id.* (footnote omitted); *see also Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003); *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc) ("If actions of city

employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees"). The claimed unconstitutional conduct forming the basis of Plaintiffs' claims must be "directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski*, 237 F.3d at 578. Any policy statement, ordinance, regulation, or decision must be *officially adopted*.

The Fifth Circuit has also stated, that "[i]t is not enough that an illegal custom exist; municipal policymakers, who are the persons capable of subjecting a municipality to liability, must be chargeable with awareness of the custom." *Milam v. City of San Antonio*, 113 Fed. App'x 622, 626 n.3 (5th Cir. 2004); *see also Okon v. Harris Cty. Hosp. Dist.*, 426 Fed. App'x 312, 316 (5th Cir. 2011)*; Pineda*, 291 F.3d at 328. The Plaintiffs have failed to plead any policy statement, ordinance, regulation, or decision that was *officially adopted by Potter County.* Consequently, the Plaintiffs' claims against Potter County are not viable because they wholly fail to meet well-settled pleading standards. *See Iqbal*, 556 U.S. at 678. The Plaintiffs allege no facts that show that Sheriff Thomas, their alleged policymaker, or Jail Captain Lisa Dawson made an "intentional choice" to violate inmates' constitutional rights.[6] *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992). By alleging no actions directly attributable to Potter County and, instead, relying on a

---

[6] The inclusion of former Jail Captain Lisa Dawson as an alleged policymaker is incorrect pursuant to Texas law. *Gray v. Brazoria Cty.*, No. 3:16-CV-109, 2017 WL 713797, at *9 (S.D. Tex. Feb. 23, 2017)(noting that under Texas law, a sheriff is the county policymaker for law enforcement including for county jails.); *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 244 n.35 (5th Cir. 1993) (holding that it has long been recognized that, in Texas, the County Sheriff is the county's final policymaker in the area of law enforcement by virtue of the Sheriff's election to office).

*respondeat superior* theory of liability, the Plaintiffs have failed to plead sufficient facts to meet this heightened standard of causation.

The Plaintiffs' Amended Complaint pairs the allegations in paragraph 154 with a pattern allegation in paragraph 156 that alleges the policies, practices, or customs of paragraph 154 were "a proximate cause of several prior suicide deaths and attempted suicides in addition to Martinez." *See* Pls.' Am. Compl. at ¶¶ 154, 156.  However, these allegations are insufficient to establish a pattern due to the long time frame between these prior suicides and because of the few details regarding the similarity in these instances.

> Such a pattern of conduct requires similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.... A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'

*Gray v. Brazoria Cty.*, No. 3:16-CV-109, 2017 WL 713797, at *8 (S.D. Tex. Feb. 23, 2017) (quoting *Peterson v. City of Fort Worth, Texas*, 588 F.3d at 851).

The Plaintiffs' Amended Complaint contains allegations about five prior suicides in paragraphs 125-129 that occurred between 1993-2008.  The Plaintiffs' Amended Complaint also alleges that there were three attempted suicides at the Potter County Jail in the two year years before Mr. Martinez's death and that during one suicide attempt an inmate cut his neck, and in another an inmate "attempted to use a ligature from a bed sheet."  *See* Pls.' Am. Compl. at ¶¶ 131-133.  Only one of these prior attempts included involves a common fact with Mr. Martinez, the ligature from a bed sheet, and in this instance details regarding the type of cell the inmate was housed within and if the inmate was known to be at risk of suicide are not included; therefore, this attempt cannot be considered sufficiently similar to be part of a pattern of prior similar incidents with similar harm.

None of the prior suicides or suicide attempts mentioned in the Plaintiffs' Amended Complaint are tied to the alleged improper policies, practice, or custom of paragraphs 154(a)-(d) or (f)-(j).  Only 154(e) alleging a pattern of "not confiscating bedding from detainees **known to be suicidal**" is tied to any of the three of the prior suicides. (emphasis added).  This leaves the Plaintiffs to demonstrate a pattern through only the prior suicides in paragraphs 125-129.  Of these only the 1993, 1998 and 2001 suicides involved inmates housed in single-person cells, that used bedsheets to commit suicide, and that were allegedly known to be at risk of suicide.  *See* Pls.' Am. Compl. at ¶¶ 125, 126, 127.  Previously, the Court held that three prior incidents over the time span of 1993-2008 involving only inmates that used bed sheets in suicides was insufficient to show a pattern regarding bed sheets that rises to the level of official policy.  *See* Doc. 32, Order at p. 21.[7]

Moreover, the allegations in the First Amended Complaint paragraphs 159-160 are too speculative and tenuous to support the necessary standard to establish a pattern of improper policies or practices.  Paragraph 159 alleges that if Martinez had received mental health care it would have prevented his suicide, and paragraph 160 alleges that Martinez would have been prevented from committing suicide in a multi-person cell.  These speculative allegations against the sad fact that "suicide is inherently difficult for anyone to predict," due to the "individualized nature of mental illness" means that these allegations cannot support a direct causal link between the alleged constitutional violation and Mr. Martinez's death.  *Domino*, 239 F.2d at 756; *Estate of Bonilla*, 982 F.3d at 306.

---

[7] In the Court's prior Order, the 2008 suicide of Marcos Portillo was included as part of a potential pattern; however, the 2008 suicide of Marcos Portillo discussed in Pls.' Am. Compl. at ¶ 129 contains no allegations that Portillo was suicidal or that his suicidal risk was known by officials at Potter County.  There can be no constitutional violation for providing bed sheets to an inmate not known to be at risk of suicide. *See* 37 TEX. ADMIN. CODE § 277.8 (mandating that inmates are provided with one sheet and blanket).  The alleged improper practice is "not confiscating bedding from detainees known to be suicidal." *See* Pls.' Am. Compl. at 154(e).

## IX.
### THE FAILURE TO TRAIN CLAIM ASSERTED AGAINST
### POTTER COUNTY SHOULD BE DISMISSED

Potter County seeks the dismissal of the failure to train claim made by Plaintiffs against it. *See* Pls.' Am. Compl. at ¶¶ 152-171; Cause of Action (C).  The allegations concerning the failure to train claim are made in paragraphs 165(a)-(f), and 166.  The allegations underlying this failure to train claim are too conclusory to properly state a claim against Potter County that it had notice of a pattern of similar violations and failed to change its training methods in the face of such a pattern of similar constitutional violations.  The Plaintiffs' allege that Potter County failed to provide adequate training to its jailers on suicide prevention by:

- ◊ "Failing to train jailers when to begin a suicide watch, and that they must be constantly observed while on suicide watch;"

- ◊ "Failing to train officers about accommodating detainees with disabilities;"

- ◊ "Failing to train jailers not to house detainees at risk of suicide in single-person cells;"

- ◊ "Failing to train jailers not to house detainees at risk of suicide in cells with 'tie off' points;"

- ◊ "Failing to train jailers not to issue bedding to detainees at risk of suicide (or that they must confiscate bedding from detainees known to be at risk of suicide);" and,

- ◊ "Failing to train jailers that video observation is ineffective at preventing suicide."

*See* Pls.' Am. Compl. at ¶ 165(a)-(f).  Additionally, the Plaintiffs allege that the training received by mental health officer Sara Shook was deficient.  *See* Pls.' Am. Compl. at ¶ 166.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  The "failure to train must constitute deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Shemwell v. Cannon*, 352 F. Supp. 3d 690, 699 (N.D. Tex. 2019).  Here

Plaintiffs must show that the County's policymaker, Sheriff Thomas, was on actual or constructive notice that a particular omission in the training program caused Potter County employees to violate citizen's constitutional rights, but Potter County chose to disregard the known or obvious consequences of the deficient training program. *Id.* To state a claim against a municipality for failure to train, the Plaintiffs must demonstrate (1) the municipality's training policy was inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the constitutional violation. *Malone v. City of Fort Worth, Tex.*, 297 F. Supp. 3d 645, 655 (N.D. Tex. 2018).

Deliberate indifference can be shown in one of two ways. *Id.* First, by demonstrating that a municipality "had notice of a pattern of similar violations fairly similar to what ultimately transpired when the plaintiffs own rights were violated." *Id.* at 656. (internal quotations omitted). This requires showing that the municipality failed to change its training methods in the face of several incidents in which training methods caused constitutional violations. *Id.* Second, a finding of deliberate indifference can be based on a single incident in a narrow exception where "a constitutional violation is likely to result as the highly predictable consequence of a particular failure to train." *Id.* The single incident exception is "generally reserved for those cases in which the government actor was provided no training whatsoever." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018)(citing *Brown v. Bryan Cty.*, 219 F.3d 450, 453-54, 462 (5th Cir. 2000)).

Potter County seeks dismissal of this claim because the Plaintiffs' allegations concerning failure-to-train are conclusory because the Plaintiffs fail to identity similar prior incidents sufficiently close in time which would have put the County on notice of a pattern of similar violations. The most recent of the prior suicides Plaintiffs attempt to use to establish a pattern of

similar violations occurred in 2008.  *See* Pls.' Am. Compl. at ¶¶ 125-129.  This is approximately ten years prior to the incident the basis of this litigation and prior to Sheriff Brian Thomas, the policymaker, taking office.[8]  Moreover, as discussed above, only a couple of these prior suicides even involve the same type of violations the Plaintiffs allege constitute a violation here: those involving a known suicidal inmate, whose bedding was not confiscated, and who was placed in a single-person cell.  These references to prior suicides, especially with a ten year gap and under a prior administration, are insufficient to plead that Sheriff Thomas was on notice of a pattern of similar violations such that Potter County was deliberately indifferent to any alleged inadequacies within its training program.

In the Plaintiffs' Amended Complaint the Plaintiffs also attempt to allege a pattern by referring to prior suicide attempts.  These allegations are in paragraphs 131-135 of the Plaintiffs' Amended Complaint.  Within these prior suicide attempt allegations the Plaintiffs point to three prior suicide attempts made in the two years before Martinez's death. *See* Pls.' Am. Compl. at ¶ 131.  None of these allegations contain details about whether the detainees who attempted suicide were known to be at risk of suicide consistent with the pattern the Plaintiffs' attempt to allege against Potter County in ¶165(e) of the Amended Complaint (that jailers were not trained to not issue bedding to detainees at risk of suicide or to confiscate bedding from detainees known to be at risk of suicide).  Also, in the Amended Complaint there are specific allegations that the officials "received training" about prior suicides in the Potter County jail.  These include allegations that: "[a]ll county officers (including Dawson and Thomas) received training about each of the above detainees' deaths" and that Thomas and Dawson "received training on the history of death, suicide

---

[8] Sheriff Brian Thomas took office as the Potter County Sheriff in January 2009.  Potter County Sheriff's Office Administration Website: https://www.pottercountysheriff.org/administration (last visited January 1, 2021).

attempts, and misconduct at the jail." *See* Pls.' Am. Compl. at ¶¶ 130, 173.  These affirmative allegations concerning the training provided on suicide prevention contradicts the Plaintiffs' attempt to allege a claim for a failure to train based on either a pattern of similar violations or the single incident exception.

Finally, the allegation in paragraph 166 that Sara Shook was inappropriately trained to be a mental health officer fails to properly allege a failure to train claim against Potter County because it fails to demonstrate a pattern of prior similar violations involving Sara Shook necessary to meet the high burden of demonstrating deliberate indifference against Potter County.  Likewise the allegation is also insufficient to meet the single incident exception applicable to situations where no training at all is provided to officers.  *Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1009 (W.D. Tex. 2019) (comparing situations where no training was provided with allegations that the training provided was improper and finding the single incident exception inapplicable to improper training allegations).

Additionally, the Plaintiffs' allegations regarding the training and qualifications of Sara Shook reflect an attempt to hold Potter County to a standard higher than required by law.  The version of the Texas Jail Standards applicable in 2018, 37 Texas Administrative Code § 273.2 (Vol. 40 Tex. Reg. 9305 Dec. 18, 2015; amended to be effective January 1, 2018, Vol. 42 Tex. Reg. 6631 Nov. 24, 2017) did not even include a requirement that jails provide a mental health officer/qualified mental health professional.  Such a requirement was not added to Texas Jail Standards requirements for Jail Health Services Plans until the standard was revised to be effective November 28, 2019.  At that time a requirement that a qualified mental health professional (as defined by 25 TAC § 412.303(48)) be provided to inmates was required in certain instances.  *See* Vol. 44 Tex. Reg. 7409 Nov. 29, 2019).  Moreover, the Plaintiffs statements that only "counselors,

psychologists, or psychiatrists," can triage patients based on gradations of suicide risk ignores the standard set forth in 26 Texas Administration Code § 301.33(48), the regulation setting forth the qualifications necessary to serve as a qualified mental health professional.

As recently as December 3, 2020 the Fifth Circuit stated that "[p]laintiffs identify no cases establishing a clear constitutional right to adequate suicide screening or to screening only by medical professionals. In *Taylor v. Barkes*, a case involving a factually similar instance of suicide by a pretrial detainee, the Supreme Court observed: "'No decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols.'" *Estate of Bonilla,* 982 F.3d at 307. Plaintiffs' attempt at alleging a failure to train claim against Potter County on the basis that Mental Health Officer Shook should have been a "licensed counselor, psychologist, or psychiatrist," contradicts both state regulatory authority and the jurisprudence of the Fifth Circuit.

For these reasons, Potter County seeks the dismissal of the Fourteenth Amendment pattern, practice, and custom claim and the failure to train claim made against it.

## X.
### THE FOURTEENTH AMENDMENT CONDITIONS-OF-CONFINEMENT CLAIM ASSERTED AGAINST POTTER COUNTY SHOULD BE DISMISSED

Defendant Potter County seeks the dismissal of the conditions-of-confinement claim brought against it by the Plaintiffs on the grounds that the Amended Complaint fails to properly state this claim.  *See* Pls.' Am. Compl. at ¶¶ 172-181; Cause of Action (D).  "A 'condition of confinement' case is a constitutional attack on 'general conditions, practices, rules, or restrictions of pretrial confinement.'"  *Flores v. Cty. of Hardeman*, 124 F.3d at 738.  When a plaintiff brings a condition of confinement case the "the proper inquiry is whether those conditions amount to punishment of the detainee."  *Garza*, 922 F.3d at 632 (citing to *Bell v. Wolfish*, 441 U.S. 520, 535

(1979)).   Under *Bell v. Wolfish*, the Plaintiffs must establish that the alleged condition of confinement is not reasonably related to a legitimate governmental objective.   *See Estate of Henson*, 795 F.3d at 463 (quoting *Bell v. Wolfish*, 441 U.S. at 539).   The Fifth Circuit has stated that three elements must be established to prove an unconstitutional condition of confinement:

> (1) "a rule or restriction or ... the existence of an identifiable intended condition or practice ... [or] that the jail official's acts or omissions were sufficiently extended or pervasive"; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [a detainee's] constitutional rights.

*Estate of Bonilla*, 982 F.3d at 308–09.

For the reasons addressed previously the Plaintiffs' have failed to state a pattern or practice sufficiently extended or pervasive to establish a pattern of prior constitutional violations. Therefore, the Plaintiffs must demonstrate the conditions they allege to be unconstitutional are not reasonably related to a legitimate governmental objective.

The specific conditions the Plaintiffs here complain of are general allegations concerning: lack of training; lack of funding for mental health care for inmates; understaffing; overcrowding; physical design of cells with tie off points; the qualifications of the mental health officer Sara Shook; the use of in-person supervision of inmates instead of video observation of inmates; and privacy screens in cells.

"Isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate."   *Shepherd*, 591 F.3d at 454. Additionally, "allegations of insufficient funding are similarly unavailing."   *Id*.   Instead, "a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights."   *Id.*

All of the conditions of confinement alleged by the Plaintiffs relate to legitimate governmental objectives and for this reason they pass the *Bell* test in *Bell v. Wolfish*. 441 U.S. at 539. Training, funding, staffing levels, and housing decisions are all recognized governmental objectives. The government's interests include "not only its need to insure the detainee's presence at trial but also its legitimate interests in managing the facility." *Nichols v. Brazos Cty.*, No. CV H-19-2820, 2020 WL 956239, at *7 (S.D. Tex. Feb. 26, 2020). Additionally, providing privacy screens (also called privacy shields) for inmates and the use of in-person supervision, not to be replaced by video surveillance, constitute conditions so clearly governmental objectives that they are the subject of state regulation. *See* 37 TEX. ADMIN. CODE § 275.1; 37 TEX. ADMIN. CODE § 261.336; 37 TEX. ADMIN. CODE § 261.238; 37 TEX. ADMIN. CODE § 261.143.

In true conditions of confinement claims it is the conditions themselves that constitute the harm. *Scott v. Moore*, 114 F.3d at 53 (holding in sexual assault of a detainee case that the action is characterized as an episodic-act-or-omission case where harm complained of is an act or omission of one or more officials). These are conditions such as "inadequate food, heating, or sanitary conditions themselves [that] constitute miserable conditions." Here the Plaintiffs have failed to allege conditions so serious that they constitute a pervasive pattern of serious deficiencies in providing for the basic human needs of pretrial detainees.

Finally, the claim of the Plaintiffs is not a true conditions-of-confinement claim because it does not focus on miserable conditions and is therefore, "an effort to fit a square peg into a round hole." *Garza*, 922 F.3d at 633–34 (affirming district court's rejection of a conditions-of-confinement claim when the claims, was only appropriately stated as an episodic-act-or-omissions claim).

Because the purported conditions identified by the Plaintiffs in the conditions of confinement claim against Potter County are all reasonably related to legitimate government interests and therefore pass the *Bell* test, and because the claims of the Plaintiffs are more appropriate as episodic-act-or-omissions claims the conditions of confinement claim brought against Potter County should be dismissed.

## XI.
### THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT CLAIM ASSERTED AGAINST POTTER COUNTY SHOULD BE DISMISSED

Potter County seeks the dismissal of the Americans with Disabilities Act and Rehabilitation Act (ADA/RA) claim brought against it in Plaintiffs' Amended Complaint in ¶¶ 189-196, Cause of Action F.  In this cause of action the Plaintiffs allege that Mr. Martinez was a qualified individual with an alleged disability of depression and suicidal tendencies and that Potter County intentionally discriminated against him by failing to accommodate him with medical and psychiatric treatment, cell modifications, confiscating his uniform and bedding, and suicide watch, safe housing, and adequate staffing.  *See* Pls.' Am. Compl. at ¶ 194.

"To make out a prima facie case under Title II or the Rehabilitation Act, a plaintiff must show '(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.'" *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)).  The ADA and Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. *Id*. at 723-724.  "A claim for failure to accommodate under the ADA has the

following elements: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations." *Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 Fed. App'x 214, 215 (5th Cir. 2015).

The Plaintiffs' claims against Potter County under the ADA/RA failure to accommodate claim of action should be dismissed because there is no evidence that Mr. Martinez was a qualified individual with a disability; that Potter County knew about his alleged disability or that Potter County failed to make reasonable accommodations. A plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious. *Cadena*, 946 F.3d at 724 (5th Cir. 2020). Finally, in order to recover compensatory damages a plaintiff must prove that the discrimination was intentional. *Id*. For discrimination to be intentional the defendant must have "at least actual notice of a violation." *Miraglia v. Bd. of Supervisors of La. State Museum,* 901 F.3d 565, 575 (5th Cir. 2008). This intentional discrimination "require[s] something more than deliberate indifference." *Cadena*, at 724 (citing to *Miraglia,* 901 F.3d at 575).

The only allegation that the Plaintiffs offer that Mr. Martinez suffered from a disability states "Martinez was a qualified individual with a disability, depression and suicidal tendencies, which substantially limited one or more life activities. Defendants knew that Martinez was a person with a disability who had expressed suicidal ideations before, and wanted to die by suicide." *See* Pls.' Am. Compl. at ¶ 193. This conclusory allegation contains no factual details about how individuals at Potter County knew about the alleged disability, how much they knew about the alleged mental disability, or the knowledge of these persons concerning what accommodations would have been necessary to accommodate Mr. Martinez's alleged disability. This is important

because "the ADA does not require clairvoyance." *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 236 (5th Cir. 2017). Even knowledge that Martinez was depressed and suicidal is not enough to state a claim against Potter County, because "knowledge of a disability is different from knowledge of the resulting limitation. And it is certainly different from knowledge of the necessary accommodation." *Id*. at 238.

In addition to lacking allegations which establish that Mr. Martinez was a qualified individual with a disability, or that the disability and its limitations were known by Potter County, the Plaintiffs have also failed to demonstrate that Potter County failed to make reasonable accommodations based on their knowledge. According to the Plaintiffs' Amended Complaint Mental Health Officer Sara Shook conducted mental health assessment of Mr. Martinez and following her assessment moved Mr. Martinez to a solitary-confinement cell and then "took no other suicide precautions." *See* Pls.' Am. Compl. at ¶¶ 53, 60, 62, 64 (emphasis added). The Plaintiffs Amended Complaint contains no details describing how individuals employed by Potter County would have had knowledge that the additional accommodations alleged by the Plaintiffs in ¶ 194 would have been needed, especially after the designated mental health officer made an assessment and moved Mr. Martinez to a different cell.

In *Smith v. Harris County*, an inmate committed suicide in the Harris County Jail the day after telling a mental health official that he had recently attempted to commit suicide and that the Illuminati was watching him and making him want to kill himself. *Smith*, 956 F.3d at 314-15. Based upon that interaction, the jail staff member responsible for checking to see whether any prisoners were at risk of suicide did not believe the decedent, Danarian Hawkins, was suicidal. *Id*. Mr. Hawkins had a lengthy history of suicide attempts, suicidal statements, and self-harming behavior. *Id*. Because the mental health officer responsible for seeing if prisoners were at risk of

suicide did not believe Mr. Hawkins was suicidal he was housed in a cell block where he had previously attempted to kill himself with a bed sheet.  *Id*.  The next day Mr. Hawkins committed suicide with his bed sheet.  *Id*.

In *Smith*, the plaintiff identified six potential accommodations that could have saved her son's life—including actions such as replacing the sheet on his bed with a knot-proof suicide blanket, more frequent observations of her son, and referring her son to the mental health unit following his conversation with the mental health jail staff member.[9] *Id*.  Despite the failure to provide all of these alleged accommodations, the Fifth Circuit held that because the plaintiff failed to show that any Harris County employee intentionally discriminated against her son by failing to provide these accommodations, her claim for compensatory damages had been correctly dismissed by the district court.  *Id.* at 320.  The Fifth Circuit in *Smith* noted that, while the jail staff member's assessment may have been wrong in retrospect, and may have even violated jail policy, that "would not convert a perhaps-negligent mistake into intentional discrimination or deliberate indifference." *Id*. at 320.  In *Smith* the Fifth Circuit held that the jail employees did not intentionally discriminate against the plaintiff's son by failing to implement the suicide-prevention measures because they had no actual notice that these additional measures were needed. *Id*.  Here the Plaintiffs' Amended Complaint contains no allegations concerning how employees at Potter County could have had knowledge that Mr. Martinez needed accommodations prior to his assessment by Mental Health Officer Shook or that they had actual notice additional accommodations were necessary after his assessment by Mental Health Officer Shook.

Because the Plaintiffs' Amended Complaint does not contain details describing how agents at Potter County knew about his alleged disability, or what limitations were associated it, and the

---

[9] These accommodations are similar to those listed by the Plaintiffs in paragraph 194 of the Amended Complaint.

claim does not contain details describing how agents for Potter County would have the necessary knowledge that additional accommodations were needed the cause of action for failure to accommodate under the ADA and Rehabilitation Act brought against Potter County should be dismissed.

## XII.
### CONCLUSION

Here the individual defendants and the supervisory defendants have asserted the defense of qualified immunity.  Because the pleadings and allegations of the Plaintiffs fail to properly allege deliberate indifference against the individual defendants to the high standard necessary to overcome the defense of qualified immunity asserted the claims against the individual defendants should be dismissed.

Likewise, the claims against the supervisory officials should also fail because pleading deliberate indifference on the part of the supervisory defendants requires the supervisors to have had knowledge of potential harm to inmates demonstrated through an existing pattern of prior similar violations in which similar harm occurred.  The Plaintiffs allegations are insufficient in this regard, especially in light of the qualified immunity defense asserted by supervisors Thomas and Dawson.  Moreover, without allegations which demonstrate a pattern of similar violations with similar harm the claims against Potter County must also be dismissed.  Finally, without factual allegations showing individuals had actual notice of the alleged disability of Plaintiffs' son, the limitations of the disability, and the necessary accommodations or further accommodations necessary the Plaintiffs cannot establish the intentional discrimination required to state the ADA/RA claim against Potter County.

WHEREFORE, PREMISES CONSIDERED, the Court should grant the Consolidated Motion to Dismiss filed by the Potter County Defendants.

Respectfully submitted,

 /s/ Matt D. Matzner
MATT D. MATZNER
Texas Bar No. 00797022
MORGAN DAY VAUGHAN
Texas Bar No. 24060769
CRENSHAW, DUPREE & MILAM, L.L.P.
P.O. Box 64479, Lubbock, Texas 79464-4479
Telephone: (806) 762-5281
Facsimile:  (806) 762-3510
mmatzner@cdmlaw.com
mvaughan@cdmlaw.com
**Counsel for Defendants**
     -And-

ALEX YARBROUGH
Texas Bar No. 24079615
RINEY & MAYFIELD LLP
320 S. Polk Street, Suite 600
Amarillo, Texas 79101
Telephone: (806) 468-3200
Facsimile:  (806) 376-4509
ayarbrough@rineymayfield.com
**Counsel for Defendant Sara Shook**

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing was on this 8th day of January, 2021, served as follows:

**VIA ECF**
Jeff Edwards
Scott Medlock
David James
EDWARDS LAW
The Haehnel Building
1101 E. 11th Street
Austin, Texas 78702
jeff@edwards-law.com;
scott@edwards-law.com;
david@edwards-law.com
**Lead Counsel for Plaintiffs**

**VIA EMAIL –**
**blackburn@blackburnbrownlaw.com**
Jeff Blackburn
Blackburn and Brown, LLP
718 S.W. 16th Avenue
Amarillo, Texas 79101
**Local Counsel for Plaintiffs**

 /s/ Matt D. Matzner
OF COUNSEL